14 N.Y.2d 47 (1964)
Essenfeld Bros., Inc., et al., Appellants,
v.
Donald S. Hostetter et al., Constituting the State Liquor Authority of the State of New York, Respondents.
Court of Appeals of the State of New York.
Argued January 7, 1964.
Decided February 27, 1964.
William M. Ivler for appellants.
Louis J. Lefkowitz, Attorney-General (Samuel A. Hirshowitz and Mark T. Walsh of counsel), for respondents.
Chief Judge DESMOND and Judges VAN VOORHIS and BURKE concur with Judge FULD; Judge DYE dissents in an opinion in which Judges SCILEPPI and BERGAN concur.
*50 FULD, J.
This is an action brought by Essenfeld Bros. and Railway Express Agency (hereafter designated REA) against the defendants constituting the State Liquor Authority (hereafter referred to interchangeably as defendants or Authority) for a declaratory judgment and an injunction. The complaint alleges, in essence, that the plaintiffs hold permits issued by *51 the Authority for the carrying of alcoholic beverages within New York State; that, for the past six or seven years, they have engaged in the business of delivering to New York residents alcoholic beverages which such residents purchased for their own personal use, while outside the United States, and shipped as consignors to themselves as consignees;[1] that in December 1962 the Authority issued Bulletin No. 359 in which it announced, in effect, that such shipments are violative of section 102 (subd. 1, par. [c]) of the Alcoholic Beverage Control Law; and that as a result the United States Commissioner of Customs notified the plaintiffs that they would not be permitted to transport or bring any alcoholic beverages into New York unless they were consigned to a person licensed to traffic in such beverages.
The plaintiffs thereupon instituted the present suit in which they seek (1) a declaratory judgment declaring that the plaintiffs are entitled to clear through United States Customs and deliver to New York residents alcoholic beverages purchased by the latter for their own personal use while outside the country and (2) an injunction to restrain the defendants from enforcing Bulletin No. 359 and interfering with the plaintiffs' clearing and delivering activities. Following service of the defendants' answer, in which they repeated their charge that the plaintiffs are engaged in acts violative of the several subdivisions of section 102, the plaintiffs moved for judgment on the pleadings or, in the alternative, for summary judgment. The court at Special Term granted the motion but, on appeal, the Appellate Division, by a divided court, reversed the resulting judgment and dismissed the complaint on the ground that section 102 (subd. 1, par. [c]) "prohibits plaintiffs from bringing and shipping into this State alcoholic beverages unless they are consigned to a person duly licensed under the statute to traffic therein" (20 A D 2d 34, 38).
*52 Although it is conceded that a New York resident, who purchases alcoholic beverages for his own personal use while outside the United States, may bring such liquor  tax and duty free if a gallon or less  with him upon his return home by physically carrying it, the State Liquor Authority insists that that resident may not enlist the services of the plaintiffs to have his purchase shipped for him as a purchase "to follow". While acknowledging that the plaintiffs may deliver such liquor once it has reached New York, the Authority contends that subdivision 1 (par. [c]) of section 102 prohibits shipment into the State to anyone not licensed to traffic in alcoholic beverages and that, since the purchaser in question is not and cannot be so licensed, he may not avail himself of the plaintiffs' services.
Subdivision 1 (par. [c]) of section 102 provides that "No alcoholic beverages shall be shipped into the state unless the same shall be consigned to a person duly licensed hereunder to traffic in alcoholic beverages" and subdivision 1 (par. [d]) declares that no common carrier or other person may bring or carry such beverages into the State unless consigned to one so licensed. This is sweeping language but, as this court wrote some years ago in construing the latter subdivision, "In the interpretation of statutes, the spirit and purpose of the act and the objects to be accomplished must be considered. * * * Literal meanings of words are not to be adhered to or suffered to `defeat the general purpose and manifest policy intended to be promoted'". (People v. Ryan, 274 N.Y. 149, 152.) "There is no more likely way to misapprehend the meaning of language  be it in a constitution, a statute, a will or a contract", Judge LEARNED HAND has reminded us, "than to read the words literally, forgetting the object which the document as a whole is meant to secure." (Central Hanover Bank & Trust Co. v. Commissioner of Int. Revenue, 159 F.2d 167, 169; see, also, Spencer v. Childs, 1 N Y 2d 103, 106-107; Cabell v. Markham, 148 F.2d 737, 739.)
With these principles in mind, it is clear that the prohibition contained in paragraph (c) of subdivision 1, as well as in paragraph (d) of subdivision 1, is directed not at a shipment to a person who has purchased liquor for his own personal use but solely at shipments to those who are engaged in the liquor business and have purchased the alcoholic beverages *53 outside the State for resale. In other words, by forbidding the shipment of intoxicating liquor to a consignee not "duly licensed * * * to traffic in alcoholic beverages," the Legislature meant merely to require that shipments into this State of liquor intended for resale must be consigned to dealers licensed as such by the State Liquor Authority and not to unlicensed dealers. Although People v. Ryan (274 N.Y. 149, supra) involved a problem somewhat different from that now before us, the approach which the court there took and the reasoning which it adopted are equally applicable here. "The definite, fixed and expressed purpose of the Legislature" in enacting the Alcoholic Beverage Control Law, we declared in Ryan (274 N. Y., at pp. 152-153), "was to regulate and control the manufacture, sale and distribution of alcoholic beverages. No purpose or intent is found to control their personal use". (Italics in original.) In short, to cull again from Ryan, "this particular section [§ 102, subd. 1, par. (d)] * * * should be construed as being intended to apply only to commercial importation" (p. 154). By a parity of reasoning, paragraph (c) of subdivision 1 of that section must likewise be construed as being designed to regulate such commercial importation, not to prevent licensed carriers from making shipments to private persons who purchase liquor abroad for their own consumption.
Indeed, were we to accept the interpretation of paragraph (c) of subdivision 1 contended for by the Authority, we would be ascribing to it a meaning at odds with the explicit language of another section of the same statute. Subdivision (c) of section 116, in so many words, authorizes a bona fide trucking agency, such as the plaintiffs herein, to deliver alcoholic beverages from various transportation depots to "a purchaser for purposes of consumption". There is no additional requirement that such a purchaser have a license "to traffic in alcoholic beverages" and, accordingly, we should not, as the court admonished in the Ryan case (274 N.Y. 149, 153, supra), read section 102 in such a way "as to deny to the [plaintiffs] the right to transport which is expressly granted by section 116." (See, also, Matter of Wylegala v. Railway Express Agency, 177 Misc. 1071, 1074, affd. 264 App. Div. 937.)
*54 Moreover, since the declared purpose underlying enactment of the statute (Alcoholic Beverage Control Law, § 2) is the "fostering and promoting [of] temperance", it is difficult, if not impossible, to explain, as Justice SARAFITE observed at Special Term (40 Misc 2d 99, 105), how it effectuates such a purpose "to allow a traveller to bring [alcoholic] beverages with him physically into the State, while prohibiting him from employing a carrier to perform the task for him". It borders on naivete to suggest that, by forbidding carriers to deliver liquor purchased outside the country, temperance would be promoted because people required to carry packages with them would forego making such purchases. It is much more likely that the Authority's rule would succeed only in forcing those travelers who are incapable, for any one of a number of reasons, of personally carrying their purchases with them, either to burden themselves with bulky packages or to buy the liquor at home. In either case, there would seem to be little, if any, effect or impact on the promotion or furtherance of temperance.
If, as of course is here the fact, a person is privileged to carry with him alcoholic beverages (which he purchased for his own use), the applicable provisions of the statute as they are now written should be read as entitling him to enlist the services of a licensed trucker to do the carrying for him. It is our opinion, therefore, that the plaintiffs' transportation of alcoholic beverages into New York does not violate the provisions of section 102 of the Alcoholic Beverage Control Law where the consignee, a resident of this State, is also the consignor and he purchased the beverages abroad for his own use. Having construed the statute as we have, there is no occasion to consider the constitutional questions advanced by the plaintiffs.
As is evident, we have limited our decision to a consideration of the plaintiffs' shipping activities and have left for future determination the further question as to the legality of certain advertising and soliciting procedures which the Authority also claims are violative of the Alcoholic Beverage Control Law. We are prompted to adopt this course not only because the latter question, inadequately raised in an oblique and confused way in the record before us, is clearly and forthrightly presented in other cases now pending in our courts  such as People v. Tourists Int. (20 A D 2d 41)  but also because examination *55 of the pleadings and affidavits in the present case indicates that the plaintiffs, while perhaps benefiting from the advertising and solicitation complained of, are not the parties who initiate or carry on those activities.
The order of the Appellate Division should be reversed and the judgment of Special Term reinstated, with costs in this court and in the Appellate Division.
DYE, J. (dissenting).
Subdivision 1 of section 102 of the Alcoholic Beverage Control Law, by paragraph (c) prohibiting shipments of alcoholic beverages into this State, unless consigned to a person duly licensed, and by paragraph (d) prohibiting common carriers from bringing or carrying liquor within the State, unless so consigned, is so clearly expressed that its meaning is unmistakable and, as such, constitutes an expression of legislative intention requiring no judicial construction or interpretation. If there is any doubt as to the public policy thus clearly stated  and none is apparent  the Legislature effectively removed it in paragraph (e) which provides: "(e) Subdivisions (c) and (d) hereof shall apply to alcoholic beverages, either in the original package or otherwise, whether intended for personal use, as well as otherwise, and to interstate, as well as intrastate, shipments or carriage." The words "whether intended for personal use" can only mean that no alcoholic beverages may be shipped into the State unless "consigned to a person duly licensed" (par. [c]).
People v. Ryan (274 N.Y. 149) is not authority to the contrary. That was a criminal prosecution against a private individual who had brought into the State a few bottles of wine and spirits which he had concededly bought and paid for solely for his personal use, not for resale or distribution to others, and who was not a "common carrier". We thus read the words "or other person" as a person engaged in an occupation similar to a common carrier who is prohibited from bringing or carrying alcoholic beverages into the State unless consigned, etc., and thus defendant committed no prohibitive act.
Section 116, relating as it does to delivery of alcoholic beverages sold within the State by a licensed retailer to a private consumer, is neither an exception to nor an enlargement of section 102. Section 102 relates to shipments and deliveries of *56 alcoholic beverages from a point outside of the State (which would normally be by sellers not licensed by the State and over whom it has no control) to a consignee within the State who, reasonably enough, must be duly licensed. While enforcement of the law in its present posture may cause inconvenience to New York residents who purchase liquor outside the State, it affords no basis for piecemeal emasculation by judicial process of clearly worded statutes expressing a long-established policy in a sensitive administrative area. If a change is desirable, it should be by appropriate legislative enactment. Until this is done, the challenged sections should be sustained as providing a reasonable and necessary restriction and limitation on the traffic of alcoholic beverages.
The order of the Appellate Division should be affirmed, with costs.
Order reversed, etc.
NOTES
[1] More specifically, it appears that each consignor-consignee effected his purchases abroad either personally or through order forms obtained by him before leaving New York State and sent while abroad to a supplier located in some foreign country (which he may or may not actually visit); in both instances, arrangements are made by the purchaser, either personally or by correspondence, with a foreign agent of one of the plaintiffs or some other carrier to have the liquor cleared through customs and delivered to him in this State.