Mr. Justice Stewart
delivered the opinion of the Court.
This case requires consideration of the relationship between the Export-Import Clause[1] and the Twenty-first Amendment[2] of the Constitution.
*474 The respondent, a Kentucky producer of distilled spirits, is also the sole distributor in the United States of “Gilbey’s Spey Royal” Scotch whisky. This whisky is produced in Scotland and is shipped via the ports of Chicago or New Orleans directly to the respondent’s bonded warehouses in Kentucky. It is subsequently sold by the respondent to customers in domestic markets throughout the United States.
A Kentucky law provides:
“No person shall ship or transport or cause to be shipped or transported into the state any distilled spirits from points without the state without first obtaining a permit from the department and paying a tax of ten cents on each proof gallon contained in the shipment.” KRS 243.680 (2)(a).
Under the authority of this statute the Kentucky Department of Revenue, petitioner, required the respondent to pay a tax of 10 cents on each proof gallon of whisky which it thus imported from Scotland. It is not disputed that, as stated by the Kentucky Court of Appeals, “the tax was collected while the whisky remained in unbroken packages in the hands of the original importer and prior to resale or use by the importer.” The respondent filed a claim for refund of the taxes, upon the ground that their imposition violated the Export-Import Clause of the Constitution. The Kentucky Tax Commission and a Kentucky Circuit Court denied the claim, but on appeal the Kentucky Court of Appeals upheld it. -367 S. W. 2d 267. We granted certiorari to consider the *475 constitutional issue which the case presents. 375 U. S. 811.
The Kentucky Court of Appeals held that the tax in question, although an occupational or license tax in form, is a tax on imports in fact. “[T]he incidence of the tax is the act of transporting or shipping the distilled spirits under consideration into this state.” 367 S. W. 2d, at 270. The court further held that the tax cannot be characterized as an inspection measure, in view of the fact that neither the statute nor the regulations implementing it provide for any actual inspection. Concluding, therefore, that the tax falls squarely within the interdiction of the Export-Import Clause, the court held that this provision of the Constitution has not been repealed, insofar as intoxicants are concerned, by the Twenty-first Amendment.[3] Accordingly, the court ruled that the respondent was entitled to a refund of the taxes it had paid. We agree with the Kentucky Court of Appeals and affirm the judgment before us.
The tax here in question is clearly of a kind prohibited by the Export-Import Clause. Brown v. Maryland, 12 Wheat. 419. As this Court stated almost a century ago in Low v. Austin, 13 Wall. 29, a case involving a California ad valorem tax on wine imported from France and stored in original cases in a San Francisco warehouse, “the goods imported do not lose their character as imports, . . . until they have passed from the control of the importer or been broken up by him from their original cases. Whilst retaining their character as imports, a tax upon them, in any shape, is within the constitutional prohibition.” Id., at 34. See Hooven & Allison Co. v. Evatt, 324 U. S. 652.
*476 As we noted in Hostetter v. Idlewild Liquor Corp., ante, p. 330, “[t]his Court made clear in the early years following adoption of the Twenty-first Amendment that by virtue of its provisions a State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders.” [4] What is involved in the present case, however, is not the generalized authority given to Congress by the Commerce Clause, but a constitutional provision which flatly prohibits any State from imposing a tax upon imports from abroad. “We have often indicated the difference in this respect between the local taxation of imports in the original package and the like taxation of goods, either before or after their shipment in interstate commerce. In the one case the immunity derives from the prohibition upon taxation of the imported merchandise itself. In the other the immunity is only from such local regulation by taxation as interferes with the constitutional power of Congress to regulate the commerce, whether the taxed merchandise is in the original package or not.” Hooven & Allison Co. v. Evatt, 324 U. S. 652, 665-666.
This Court has never so much as intimated that the Twenty-first Amendment has operated to permit what the Export-Import Clause precisely and explicitly forbids. In State Board v. Young’s Market Co., 299 U. S. 59, 62, the Court said that the Twenty-first Amendment “abrogated the right to import free [from Missouri or Wisconsin, under the Commerce Clause] so far as concerns intoxicating liquors.” In that case the appellee had argued in its brief that such a holding would imply an invalidation of the Export-Import Clause as well,[5] but *477 the Court’s opinion was careful to note, “[t]he plaintiffs insist' that to sustain the exaction of the importer’s license-fee would involve a declaration that the Amendment has, in respect to liquor, freed the States from all restrictions upon the police power to be found in other provisions of the Constitution. The question for decision requires no such generalization.” Id., at 64. In Gordon v. Texas, 355 U. S. 369, the Court in a brief per curiam affirmed a Texas conviction for illegal possession of 11 bottles of rum which had been imported without a permit and to which the required Texas tax stamps were not affixed. The state tax in that case had been held to be not a tax on imports.[6] It is clear that the gravamen of the offense in Gordon was the failure to obtain, or even apply for, a permit as required by state law. Such permits, in addition to other functions, serve to channelize the traffic in liquor and thus to prevent diversion of that traffic into unauthorized channels. In the present case the respondent has both applied for and obtained the requisite permit. The relief it requests is not the abrogation of that requirement, but simply a refund of the import tax.
To sustain the tax which Kentucky has imposed in this case would require nothing short of squarely holding that the Twenty-first Amendment has completely repealed the Export-Import Clause so far as intoxicants are concerned.[7] Nothing in the language of the Amendment nor *478 in its history leads to such an extraordinary conclusion. This Court has never intimated such a view, and now that the claim for the first time is squarely presented, we expressly reject it.
We have no doubt that under the Twenty-first Amendment Kentucky could not only regulate, but could completely prohibit the importation of some intoxicants, or of all intoxicants, destined for distribution, use, or consumption within its borders. There can surely be no doubt, either, of Kentucky’s plenary power to regulate and control, by .taxation or otherwise, the distribution, use, or consumption of intoxicants within her territory after they have been imported. All we decide today is that, because of the explicit and precise words of the Export-Import Clause of the Constitution, Kentucky may not lay this impost on these imports from abroad.

Affirmed.

Mr. Justice Brennan took no part in the disposition of this case.

 “No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing it’s inspection Laws: and the net Produce of all Duties and Imposts, laid by any State on Imports *474 or Exports, shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Controul of the Congress.” U. S. Const., Art. I, § 10, cl. 2.

 “The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.” U. S. Const., Amend. XXI, § 2.

 As the Kentucky Court of Appeals noted, two other state courts have reached the same conclusion. Parrott & Co. v. San Francisco, 131 Cal. App. 2d 332, 280 P. 2d 881; State v. Board of Review, 15 Wis. 2d 330, 112 N. W. 2d 914.

 See State Board v. Young’s Market Co., 299 U. S. 59; Brewing Co. v. Liquor Comm’n, 305 U. S. 391; Finch & Co. v. McKittrick, 305 U. S. 395.

 See brief for appellees, No. 22, 1936 Term, pp. 24-25.

 “It is apparent that the tax involved is not an import tax nor a tax upon an importation. In fact, the instant tax could not become an import tax because the importation must have been completed before the tax here levied attached.” Gordon v. State, 166 Tex. Cr. R. 24, 27, 310 S. W. 2d 328, 330.

 Prior to the Eighteenth Amendment Congress passed the Webb-Kenyon Act and the Wilson Act, giving the States a large degree of autonomy in regulating the importation and distribution of intoxicants. Those laws are still in force. 27 U. S. C. §§ 121, 122. In De Bary v. Louisiana, 227 U. S. 108, the Court upheld under the *478 Wilson Act a Louisiana license 'tax imposed on the business of selling in their original packages wines and liquors imported from abroad. There is nothing in that decision, nor in the language of either the Wilson Act or the Webb-Kenyon Act, to support the view that Congress intended by those laws to consent to state taxation upon importation of liquor.