BERBIGLIA, INC., a corporation, Plaintiff,

v.

J. R. CHENEY, Director of State of Kansas Alcoholic Beverage Control, Roy Dyer, Chief Enforcement Officer, Henry M. Levi, Frank J. Muraski, and all unknown officers, agents, servants and employees of State of Kansas Alcoholic Beverage Control, Each Here named John Doe, Defendants,

Denzil B. McPherson, Intervenor.

No. 15237-D.

United States District Court
W. D. Missouri, W. D.

Dec. 30, 1965.

George L. Gisler, Kansas City, Mo., for plaintiff.

William M. Ferguson, Atty. Gen., of Kansas, Topeka, Kan., Gordon, Adams, Niewald & Risjord, Kansas City, Mo., for defendants.

William F. Milligan, Kansas City, Mo., and Payne, Jones, Anderson & Payne, Olathe, Kan., for intervenor.

DUNCAN, Senior District Judge.

Plaintiff, a Missouri corporation, instituted this suit in the Circuit Court of Jackson County, Missouri, against the defendants, all of whom are residents and citizens of the State of Kansas, and removed to this court by said non-resident defendants.

In its Amended Complaint, plaintiff alleges that it has been engaged in the sale of packaged liquor in Kansas City, Missouri, over a period of 25 years and has 14 stores located in various areas throughout said city.

From the addresses given in the Complaint it is clear that a number of said stores are located within a comparatively short distance from the line dividing the states of Missouri and Kansas and the populous areas adjacent thereto.

Plaintiff alleges that it has developed a large trade in its merchandise not only among Missouri residents, but among residents of the State of Kansas as a result of its substantially lower prices and greater variety.

The defendant J. R. Cheney is the Director of the Alcoholic Beverage Control with offices in Topeka, Kansas; the defendant Roy Dyer is Chief Enforcement Officer thereof, and the defendants Levi, Muraski and John Doe are agents and employees of the Director of the Alcoholic Beverage Control.

Plaintiff further alleges that defendants had entered into a conspiracy to damage the business enjoyed by the plaintiff, and in furtherance of the conspiracy, the defendants Levi, Muraski and Doe came into the State of Missouri every day and stationed themselves in their automobiles at locations at or near one or more of plaintiff's stores, with the purpose to and did harass, intimidate and frighten plaintiff's customers who are residents of the State of Kansas, by following said customers from plaintiff's stores in their automobiles over the streets and highways of the State of Missouri into the State of Kansas, where the defendants then and there unlawfully and illegally searched the automobiles of such customers, seized the property of plaintiff's customers and arrested and forced them to undergo humiliation and expense of trial in a justice of the peace or magistrate court in the State of Kansas, under the wholly illegal, unlawful and unconstitutional claims that persons entering the State of Kansas with liquor in their possession for their own personal use purchased in places other than the State of Kansas, must have revenue stamps of the State of Kansas stamped on the containers of such liquor at the time of such entry.

It is further alleged that such persons were offered no opportunity to pay the tax or to purchase stamps; that neither the Kansas State Liquor Control Act nor the regulations issued thereunder made any provision for any means whereby any person other than a manufacturer or distributor could purchase or pay said tax, and that the agents of the Kansas Alcoholic Beverage Control are instructed to refuse to accept or permit payment of the tax by persons purchasing liquor outside the State of Kansas, and that persons arrested by the said agents were deprived of their liberty, and upon confiscation of

their liquor, are dispossessed of their property, without due process of law, in violation of the 14th Amendment to the Constitution of the United States.

It is further alleged that while spying on persons entering plaintiff's stores in Missouri, the defendant officers used their two-way radios to communicate with other agents in Missouri or Kansas, for the purpose of obtaining their assistance in apprehending and searching such persons as soon as they crossed the state line into Kansas.

It is further alleged that the acts of the defendants were undertaken only on complaint of retail liquor dealers in the State of Kansas, and constitute a conspiracy to coerce and intimidate residents of Kansas so that said residents will not trade or conduct business with retail stores in Missouri, but will be forced to purchase only from Kansas retailers.

It is further alleged that the defendants, in surreptitiously secreting themselves in positions in automobiles near the retail stores operated by plaintiff and in exercising police powers through surveillance and spying on customers of plaintiff who are or were residents of Kansas, and who were lawfully making purchases of plaintiff's merchandise, were wrongful, malicious, unlawful, illegal and in violation of the constitutional rights of plaintiff and of plaintiff's customers in that:

"(a) Said acts of defendants constitute a nuisance.

(b) Said acts of defendants in causing plaintiff's customers to become fearful and frightened and to stay away from plaintiff's stores and to refuse to make purchases of plaintiff's merchandise constitute an interference with interstate commerce and the plaintiff's right to conduct its business with all persons seeking to purchase its merchandise;

(c) Said acts constitute an unlawful interference with the legitimate and lawful operation of plaintiff's business and said acts further constitute a violation of plaintiff's rights under the Fourteenth Amendment of the Constitution of the United States of America and of Article 1, Section 10 of the Constitution of the State of Missouri [V.A.M.S.].

(d) Said acts of defendants, the conspiracy of defendants and the acts in furtherance of said conspiracy are without authority from the State of Missouri or the people of the State of Missouri and constitute an attempt to exercise the police power of the State of Kansas within the State of Missouri, all in violation of Article 1, Section 3 and Section 4 of the Constitution of Missouri and in violation of the Tenth Amendment to the Constitution of the United States of America.

(e) The liquor control act of the State of Kansas does not require the containers of liquor purchased at retail outside the State of Kansas to bear revenue stamps of the State of Kansas and said act if so construed and enforced and if construed so that possession of such liquor without Kansas revenue stamps is a criminal act would be and is unconstitutional as being in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and of Section 9 of Article 11 of said Constitution and of Article 11, Section 5 of the Constitution of the State of Kansas and Sections 1, 15 and 17 of the Bill of Rights of the Constitution of the State of Kansas. The said act if so construed constitutes an attempt to coerce and intimidate plaintiff's customers by denying them due process of law as guaranteed by the above mentioned constitutional provisions and constitutes a conspiracy in restraint of trade."

On December 14, 1964, Denzil B. McPherson, was granted leave to intervene as a plaintiff. He alleges that as a result of the lawful purchase of liquor in the State of Missouri for his own personal consumption at his residence in Kansas, he was followed by agents of the Kansas Alcoholic Beverage Control into the State

of Kansas, where he was arrested by the agents of said Alcoholic Beverage Control, charged with and convicted of possessing alcoholic liquor which did not bear the Kansas Revenue stamp or mark.

He alleges that the action of the authorities was without due process of law and in violation of his constitutional rights, and asks that the defendants be enjoined from any further action on their part which would deprive the intervenor and others similarly situated of their liberty without due process of law and in violation of the orders of this court.

McPherson was permitted to intervene on the ground that his claim presented a question of law and fact common to the pending litigation. However, in view of the fact that the said intervenor is a resident of Kansas, to permit him to intervene as a plaintiff would destroy the jurisdiction of this court. The action would no longer be wholly between residents of different states and this court would be without jurisdiction.

The order of this court permitting the intervenor to intervene as a plaintiff is therefore hereby set aside and his petition is hereby dismissed. See 4 Moore's Federal Practice 24.18(3), p. 139.

Defendants have filed Motion to Dismiss alleging that plaintiff's complaint fails to state a cause of action. The parties have filed extensive briefs in support of and in opposition to said motion; depositions have been taken of the defendants; all of which are before this court for consideration in connection with the motion. For the purpose of ruling on this motion, all of the allegations of the complaint will be accepted as true.

§ 41–501(2) (a) of the Kansas Liquor Control Act provides:

"For the purpose of raising revenue a tax is imposed upon the manufacturing, using, selling, storing or purchasing alcoholic liquors in this state or a federal area * * * (the amounts upon the various types of alcoholic beverages are set out)

(b) Said tax shall be paid only once, and shall be paid by the person in this state or federal area who first manufactures, uses, sells, stores, purchases, or receives such alcoholic liquor; and shall be collected and paid to the director as provided in this act. If such alcoholic liquor is manufactured and sold in this state or a federal area, such tax shall be paid by the manufacturer. If such alcoholic liquor is imported into this state by a distributor for the purpose of sale at wholesale in this state or a federal area, such tax shall be paid by said distributor."

§ 41–407 provides:

"It shall be unlawful for any person (1) to evade, or attempt to evade, the payment of tax or duty on any such alcoholic liquor, in any manner whatever, and upon conviction thereof, in addition to the penalty prescribed for the violation of this act, such person shall forfeit and pay, as a part of costs in such action, double the amount of the tax so evaded or attempted to be evaded; (2) to have in his possession any cask or package of such liquor, without having thereon each mark and stamp required therefor by law; and such cask or package not having the mark or stamp as aforesaid, shall be forfeited to the state of Kansas; * * * *."

We will first dispose of the contention of the plaintiff as to the validity of the Kansas statute both as to its constitutionality and as to its application and enforcement by the defendants.

[2] First, we think that the plaintiff has no standing to raise the question of the constitutionality of the Kansas Act. As a Missouri corporation it has never been adversely, legally affected by the Act. It has never been arrested or prosecuted under the Act, nor has it ever been legally directed or controlled under its provisions.

[3] If the plaintiff had the standing to challenge the Act this court would still be without authority to determine the constitutionality of the Act. Under 28

U.S.C. § 2284 such a determination may only be made by a three-judge court.

■ It is one of plaintiff's principal complaints that the statute does not require the attachment of stamps or marks on liquor purchased in Missouri by residents of Kansas and transported into that state for their own private consumption. The law is very clear that:

> "It shall be unlawful for any person * * * to have in his possession any cask or package of such liquor, without having thereon each mark and stamp required therefor by law; and such cask or package not having the mark or stamp as aforesaid, shall be forfeited to the state of Kansas; * * *."

The statute is very clear also in its provisions that the tax must be paid by the manufacturer of liquor manufactured and sold within the state of Kansas, or if the liquor is imported into the state by a distributor for the purpose of sale at wholesale in the state or a Federal area, it shall be paid by the distributor. There is no provision in the Act for payment of tax by the consumers.

The sale of package liquor to consumers in the State of Kansas is through state controlled liquor stores. The Act and the regulations issued pursuant thereto are part of a comprehensive scheme to control the liquor traffic within the State of Kansas. We assume that it will be conceded that the power of a state to regulate the sale, distribution or use of liquor

within its boundaries will not be questioned. Ziffrin, Inc. v. Reeves, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128 (1939); Gordon v. State of Texas, 355 U.S. 369, 78 S.Ct. 363, 2 L.Ed.2d 352 (1958); Department of Revenue v. James B. Beam Co., 377 U.S. 341, 84 S.Ct. 1247, 12 L.Ed.2d 362. In the latter case it was stated at 346, 84 S.Ct. at 1250:

> "We have no doubt that under the Twenty-first Amendment Kentucky could not only regulate, but could completely prohibit the importation of some intoxicants, or of all intoxicants, destined for distribution, use, or consumption within its borders. There can surely be no doubt, either, of Kentucky's plenary power to regulate and control, by taxation or otherwise, the distribution, use, or consumption of intoxicants within her territory after they have been imported."

The question of the validity of the Act was before the Supreme Court of Kansas in State v. Payne, 183 Kan. 396, 402, 327 P.2d 1071 (1958). In that case the defendant was charged with evading payment of tax or duty on alcoholic liquor by having in his possession a jug of wine, alcoholic liquor, upon which the tax imposed by the state had not been paid and upon which there was no stamp or mark required by the law. Upon a plea of not guilty the case was submitted to the court upon stipulation,[1] the pertinent parts of which are set out in the foot note.

---

1. "Stipulation.

It is hereby stipulated by and between the above named plaintiff, State of Kansas, and the above named defendant, Ray Payne, that the uncontradicted evidence and facts in this action are as follows:

That on June 13, 1957, the defendant purchased one-half gallon of white port wine in the State of Missouri; that the defendant walked from Missouri with said wine into the City of Mulberry, Crawford County, Kansas; that shortly thereafter, the defendant, with said wine in his possession was arrested in the City of Mulberry, Crawford County, Kansas, by agents of the Kansas Alcoholic Beverage Control Board; that said white port wine is 'an alcoholic liquor' as

defined by the laws of the State of Kansas; that the tax assessed on said wine by the State of Missouri had been paid; that no tax had been paid to the State of Kansas on said wine prior to or at the time of the defendant's arrest; that said wine was not for use by any church or religious organization for sacramental purposes or uses; that the tax assessed under the law on one-half gallon of white port wine is twenty cents; that the tax assessed under the law, by the State of Missouri on one-half gallon of white port wine is five cents; that there was no stamp or mark required by Kansas law affixed to said bottle of wine or the case from which it was taken."

It is recited that the wine had been purchased in Missouri and transported into Kansas; that no tax had been paid and no marks or stamps were on the bottle as required by the Kansas law. The court found the defendant guilty and upon appeal the Supreme Court affirmed. In so doing, the court not only found that the facts as admitted rendered the defendant guilty, but also the court discussed the purposes of the Act and established its validity. As to its purpose, the Court said:

"In its comprehensive scheme of regulating, licensing and taxing alcoholic liquor from the time of its manufacture or importation into the state until its ultimate sale by a licensed retailer for use and consumption, the manifest purpose of the legislature was to channelize the liquor traffic; to minimize the commonly attendant evils; also, to facilitate the collection of revenue.

To this end the manufacture, sale, transportation, and possession are permitted only under carefully prescribed conditions (G.S. 1949, 41–104), and subject to constant control by the state (G.S. 1949, 41–208).

All phases of the traffic are declared illegal unless definitely authorized by the act (G.S. 1949, 41–104). It was clearly intended that, except for the possession and use of alcoholic liquor referred to in G.S. 1949, 41–104(2), (3), (4), (5) and (6), and G.S. 1957 Supp. 41–501(4), (5) and (9), it shall be unlawful for any person to possess alcoholic liquor for his personal use in Kansas without having the Kansas tax stamps affixed to containers thereof (G.S. 1949, 41–104; G.S. 1957 Supp. 41–407, 41–501, 41–502; State v. Wilson [169 Kan. 659, 220 P.2d 121], supra.

Since Kansas tax stamps are affixed only to alcoholic liquor purchased from licensed retailers, it is evident that possession of alcoholic liquor by any person for use in this state acquired from any other source constitutes a violation of G.S. 1957 Supp. 41–407. Furthermore, the effect of the act is to require that all alcoholic liquor for use in this state bear its proportionate share of the gallonage tax.

Had the defendant purchased the wine from a licensed retailer, taxes at the rate of 20 cents would have been paid to the state. His purchase of it in Missouri and possession in Kansas for personal use constituted an evasion of the amount of that tax. The fact that the mechanics of collecting the tax are such that the defendant could not directly pay that amount does not make *its evasion* any less a crime.

The only significant difference between the 1957 amendment and the act as originally enacted, when construed by State v. Sumner [169 Kan. 516, 219 P.2d 438], supra, and State v. Wilson [169 Kan. 659, 220 P.2d 121], supra, is that the legislature has now prohibited the possession of all untaxed and unstamped alcoholic liquor for personal use in this state.

In view of the foregoing the defendant's contention that G.S. 1957 Supp. 41–407 is inapplicable to him cannot be sustained."

Many of the same questions were raised by the defense that are raised by plaintiff here touching the validity of the Act. Plaintiff insists that the holding in the Payne case is distinguishable from its contentions here because the stipulation was in effect a plea of guilty. It admitted the issue which is the crux of the present case, namely, that the laws of Kansas require a gallonage tax stamp on liquor purchased in Missouri and brought into Kansas for one's personal use. It is true that the stipulation did not say whether or not the wine was for Payne's personal use, but it did say that it was not for use by any church or religious organization for sacramental purposes or uses.

The law provides no exceptions except those set out therein respecting the necessity for all possessed liquor in Kansas to

bear the stamp or mark. In this regard that court stated, 327 P.2d l. c. 1078:

"The only significant difference between the 1957 amendment and the act as originally enacted, when construed by State v. Sumner, supra, and State v. Wilson, supra, is that the legislature has now prohibited the possession of all untaxed and unstamped alcoholic liquor for personal use in this state."

If the parties further desire to test the constitutionality of the Act and the method of its enforcement, the citizens of the State of Kansas who have been victims of the activities of the "Border Patrol", must seek their remedies in the courts of their own state. This court has no jurisdiction to grant them any relief in this collateral proceeding.

The plaintiff has cited Murphy v. Love, 10 Cir., 249 F.2d 783, and believes that this court may well consider it determinative of the issue as to the validity of the tax upon liquor purchased in Missouri and transported into the State of Kansas for the consumer's private use.

That action arose over the purchase of liquor in Missouri by an officer on the Kansas Reservation at Fort Leavenworth, Kansas, for delivery to him on the Reservation by a common carrier. The containers were not marked or stamped with Kansas revenue stamps evidencing payment of the Kansas Gallonage Tax as required by the statute, and upon entering the State of Kansas, the liquor was seized in the possession of the common carrier by the Kansas Alcoholic Beverage Control. Thereafter the carrier sought to enjoin the Alcoholic Beverage Control from interfering with such transportation.

Upon a hearing a mandatory injunction was issued by the United States District Court for the State of Kansas, and on appeal was affirmed. On appeal, eight assignments of error were urged for reversal:

"* * * but in the main they present but one central question, and that is whether Kansas was empowered to stop this interstate ship-

ment of liquor from Missouri to the Fort Leavenworth Military Reservation because the shipment did not have attached Kansas liquor revenue stamps. It is without dispute that military reservations, such as we have here, are separate entities and do not constitute a part of the state in which they are located for general jurisdictional purposes."

It is also stated in the opinion that:

"* * * it must be conceded that the seizure of this shipment is an interference with interstate commerce and constituted a burden thereon which the State may not impose, absent statutory authority authorizing the same."

The court further stated that:

"By Chapter 66, § 1 of the Laws of 1875, Kansas ceded exclusive jurisdiction of the Fort Leavenworth Military Reservation to the United States, reserving only the right to serve criminal and civil process thereon and also reserving the right 'to tax the property and franchises of any railroad, bridge, or other corporations within the boundaries of such lands.'"

The effect of the opinion was that the tax did not apply to liquor for delivery on the Reservation or liquor consigned to the Reservation, but the court did hold that the legislature could, by proper legislation, impose a tax under the Buck Act of 1940, 4 U.S.C.A. § 105 et seq. Judge Huxman stated, 249 F.2d l. c. 788:

"Since Kansas does not have territorial jurisdiction to regulate liquor in the Federal enclave it has no authority to impose revenue measures concerning liquor which are inseparable from such regulatory aspects of the Act."

In the last paragraph of the opinion, Judge Huxman continued:

"At most there was a violation of the provision making it unlawful to have possession in Kansas of liquor not bearing the Kansas revenue stamps. But liquor passing across

Kansas in interstate commerce does not come to rest in Kansas and, therefore, the law making it unlawful to have in possession in Kansas liquor without Kansas revenue stamps attached thereto has no application to such shipments."

The court treated the transportation as though the liquor was moving in interstate commerce between separate states. Under such different state of facts, the decision is not applicable here.

■ If this court had the authority to determine the question of the validity of the Act, which we do not have, we would be bound by the court's opinion in State v. Payne, supra, as to its interpretation. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. It would also be our conclusion that the possession of the liquor acquired outside the State of Kansas and transported thereto for private consumption therein, not bearing the Kansas Revenue stamp or mark, would be in violation of the Act.

■ This court is not vested with jurisdiction to determine the question of the legality of the search, seizure and arrest of plaintiff's customers in the State of Kansas. Repeating what we have already said, these are purely questions that must be determined by the courts within the jurisdiction of the search and seizure and arrest.

■■ Plaintiff further charges that the action and conduct of the "Border Patrol" in Missouri constitutes an actionable nuisance. There must be some invasion of a legal right resulting in injury, in order to constitute an actionable nuisance. In other words, a cause of action for damages resulting from a continuing nuisance consists of a primary right and a corresponding duty coupled with an actual injury. 66 C.J.S. Nuisances § 8a, p. 739.

■ We are unable to find any violation of any legal duty or obligation in the conduct of the "Border Patrol". True, they are officers of the State of Kansas, but they exercise no legal function within the State of Missouri. It is true they use the automobiles provided by the State of Kansas, and in one of the depositions it is stated that they bear firearms in Missouri, but that they are concealed in the compartments of their automobiles, they perform no function as officers or any function which could not be performed by any citizen of the State of Kansas or any retail liquor dealer who saw fit to do the things that the officers are doing, i. e., to spy upon or observe citizens of Kansas purchasing liquor from plaintiff's stores, which is a perfectly legal transaction, for transportation into the State of Kansas. Such observers then either followed the automobile from the place of purchase into the State of Kansas, where an arrest is made, or they use the two-way radio to communicate with fellow officers who are located in the State of Kansas, conveying to them the information as to the purchase, who in turn make the search, seizure and arrest.

■ At no time do they ever exercise any police power within the State of Missouri. Driving upon the streets and parking upon the streets of the State of Missouri, is legal, subject only to control by the City Ordinances of the City of Kansas City, Missouri. Observing plaintiff's customers without any contact with such customers, or any communication with them or any effort to deter them at the time from making purchases, is not a violation of the law, and following such customers back to the state line likewise is not a violation of the law. Beyond the state line of Missouri this court has no jurisdiction.

■ We do not believe that the efforts of the agents of the Kansas "Border Patrol" as described for the purpose of enforcing its laws in the State of Kansas can be challenged as an unconstitutional interference with interstate commerce. The state can completely prohibit liquor if it pleases, so the requirements that the liquor have the tax stamp is not an unburdenable requirement.

Next the plaintiff alleges that a conspiracy has been entered into between the officers of the Alcoholic Beverage Control and the retail liquor dealers of the State

of Kansas to perform the acts which have heretofore been described by the plaintiff to be illegal.

A conspiracy is a combination or confederacy between two or more persons formed for the purpose of committing, by their joint efforts, some unlawful or criminal act, or some act which is innocent in itself, but becomes unlawful when done by the concerted action of the conspirators, or for the purpose of using criminal or unlawful means to the commission of an act not in itself unlawful. Pettibone v. United States, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419.

 More simply stated, a conspiracy might be defined as an agreement between two or more persons to perform an unlawful act or to perform a lawful act in an unlawful manner. It is well established that an action may not be brought on a "civil" conspiracy. Of course, an action may be maintained for damages sustained by a criminal conspiracy, but the damage and not the conspiracy is the gist of the action. Thus, in order to recover damages or to have an injunction granted in this civil suit on the ground of conspiracy, there must be a criminal conspiracy.

 We believe that the admitted facts in this case do not reflect that the agents are engaged in any illegal conspiracy. They are doing nothing more than any citizen or group of citizens might do. Even if there was an agreement between the defendants and the liquor dealers of Kansas to do the acts herein complained of, it does not seem that it can be illegal to set in motion the machinery for the enforcement of the Kansas Liquor Laws.

Plaintiff has cited a number of cases from other jurisdictions where the police have been enjoined from interfering with a legitimate business, but the facts in those cases render them inapplicable here.

It is our conclusion that the plaintiff cannot complain of the enforcement of the Kansas Liquor Laws even though such enforcement may result in the failure of the citizens of Kansas to purchase its merchandise because of the fear that they will be searched, arrested and their purchases seized.

We are unable to find in any of the allegations of the complaint that any of plaintiff's constitutional rights have been violated by the actions of the Kansas officers.

For the above reasons, defendants' Motion to Dismiss is hereby sustained without leave to plead further.