**HOUSE OF YORK, LTD.** and **Chase Processing Corporation, Plaintiffs,**

v.

**Thomas F. RING, Benjamin H. Balcom, Robert E. Doyle, John C. Hart** and **Walter C. Schmidt,** being the Chairman, Members and Commissioners of the State Liquor Authority of the State of New York,

and

**Norman F. Gallman, A. Bruce Manley** and **Milton Koerner,** being the Acting President and Members of the State Tax Commission of the State of New York, Defendants.

No. 70 Civ. 3781.

United States District Court,
S. D. New York.

Dec. 14, 1970.

William M. Ivler, c/o Zraick & Nahas, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants; Joel Lewittes, Asst. Atty. Gen., of counsel.

Before FRIENDLY, Circuit Judge, and PALMIERI and BRYAN, District Judges.

PALMIERI, District Judge.

The plaintiffs seek a declaratory judgment of unconstitutionality and a permanent injunction against the enforcement of a New York state statute relating to the purchases of liquor and wine by residents of New York State.

Plaintiffs' application for a three-judge court was granted on September 14, 1970, pursuant to 28 U.S.C. §§ 2281, 2284. The court was convoked by order of the Chief Judge of this circuit on September 24, 1970.

The facts have been stipulated and so far as they are pertinent to this decision they are substantially as follows. The plaintiff, House of York, Ltd. (York), is engaged in soliciting orders for liquor and wine by mail for eventual delivery to the homes or places of business of New York residents. York is a Delaware corporation with its principal place of business in Wilmington, Delaware. It maintains no business facilities in New York State. Its solicitations are mailed in New Jersey. York has carried on a substantial business amounting to about one million dollars for the twelve month period prior to July 31, 1970, and to about five million dollars for the past three and one-half years.

Chase Processing Corporation (Chase), the second plaintiff, is a New York freight consolidator and forwarder. It subcontracts for twelve trucks which are engaged in the pick-ups and deliveries of merchandise to York's customers in New York. Chase has done a substantial business, amounting to about $225,000 a year.

The defendants are the New York state officials charged with enforcement of the challenged statute.

The statute which is the basis for this litigation, Chapter 242, Laws of 1970, became effective by its terms on September 1, 1970. Its effect is to prohibit York from sending its solicitations or order forms into the State of New York unless it is licensed;[1] to prohibit New

---

1. § 2. Subdivision one of section one hundred two of the alcoholic beverage control law, as amended by chapter one hundred sixteen of the laws of nineteen hundred forty, is hereby amended to read as follows:

1. (a) No person shall send or cause to be sent into the state any letter, postcard, circular, newspaper, pamphlet, order kit, order form, invitation to order, price list, or publication of any kind containing an advertisement or a solicitation of any order for any alcoholic beverages, irrespective of whether the purchase is made or to be made within or without the state, or whether intended for commercial or personal use or otherwise, unless such person shall be duly licensed hereunder to traffic in alcoholic beverages.

(b) No person shall issue or publish or cause to be issued or published in the state any letter, postcard, circular, newspaper, pamphlet, order kit, order form,

York residents from availing themselves of York's services;[2] and to prohibit Chase from delivering liquor to mail order purchasers.[3] Also in issue are sections 3 through 7[4] which amend the Tax Law and, in effect, provide that an excise

invitation to order, price list, or publication of any kind containing an advertisement or a solicitation of any order for any alcoholic beverages, irrespective of whether the purchase is made or to be made within or without the state, or whether intended for commercial or personal use or otherwise, unless such person shall be duly licensed hereunder to traffic in alcoholic beverages. Chapter 242, Laws of New York 1970.

2. § 2.1(c) No alcoholic beverages shall be shipped into the state unless the same shall be consigned to a person duly licensed hereunder to traffic in alcoholic beverages. This prohibition shall apply to all shipments of alcoholic beverages into New York state and includes importation or distribution for commercial purposes, for personal use, or otherwise, and irrespective of whether such alcoholic beverages were purchased within or without the state, provided, however, this prohibition shall not apply to any shipment consigned to a New York resident who has personally purchased alcoholic beverages for his personal use while outside the United States for a minimum period of forty-eight consecutive hours and which he has shipped as consignor to himself as consignee. Purchases made outside the United States by persons other than the purchaser himself, regardless whether made as his agent, or by his authorization or on his behalf, are deemed not to have been personally purchased within the meaning of this paragraph. Chapter 242, Laws of New York 1970.

3. § 2.1(d) No common carrier or other person shall bring or carry into the state any alcoholic beverages, unless the same shall be consigned to a person duly licensed hereunder to traffic in alcoholic beverages, provided, however, that alcoholic beverages may be delivered by a trucking permittee from a steamship or railroad station or terminal to a New York resident who has personally purchased alcoholic beverages for his personal use while outside the United States for a minimum period of forty-eight consecutive hours, and which he has shipped as consignor to himself as consignee, and except as so stated, no trucking permittee shall accept for delivery, deliver or transport from a steamship or railroad station or terminal any shipment of alcoholic beverages consigned to a nonlicensed person having his home or business in New York state. Purchases of alcoholic beverages made outside the United States by persons other than the purchaser himself, regardless whether made as his agent, or by his authorization or on his behalf, are deemed not to have been personally purchased within the meaning of this paragraph. Chapter 242, Laws of New York 1970.

4. The most relevant amendments in this connection for the purposes of this opinion are:
§ 5.14. "Noncommercial importer" means a person other than a distributor who imports or causes to be imported into this state alcoholic beverages, except that such person shall not be a noncommercial importer where he imports or causes to be imported into this state alcoholic beverages in the quantities and under the conditions provided by subdivision four of section four hundred twenty-four.
§ 6.2. Such taxes [those imposed on distributors and noncommercial importers] shall be due on the twentieth day of the month following the month in which such alcoholic beverages are sold or used by such distributor or noncommercial importer, regardless of whether or not a return is filed as required by this article.
§ 7.4. Notwithstanding any other provision of this article, there shall be exempt from the taxes imposed under this article, per month, one-quart of alcoholic beverages (or one gallon of such beverages in the case of a person arriving directly or indirectly from American Samoa, Guam or the Virgin Islands of the United States not more than one-quart of which shall have been acquired elsewhere than in such insular possessions):
  (i) purchased outside this state as an incident to a journey from which the purchaser is returning and
  (ii) not to be offered for sale or used for any commercial purpose,
provided such alcoholic beverages accompany such person on his return to this state and provided, further, that in the case of a person arriving in this state from other than a state of the United States (including the District of Columbia), the Virgin Islands of the United States or a contiguous country maintaining a free zone or free port, such person shall have remained beyond the territorial limits of the United States for a period of not less than forty-eight hours. Chapter 242, Laws of New York 1970.

tax be paid on all liquors sold or used within New York by distributors and noncommercial importers except on specified amounts imported by a returning traveler incident to a journey if the liquor is in the actual possession of such traveler on his return.

There is no doubt that the law in question was aimed directly at persons like York engaged in the liquor and wine mail order business. The business is conducted substantially as follows: the price list is mailed to the New York State resident, along with an order blank. Upon the return of the order, and a check for the correct amount, the mail order concern forwards the order forms and checks to a Belgian shipper, K. Gjertsen & Co. (Gjertsen), at Antwerp. Purchase orders and checks are also mailed directly to the Belgian shipper in some instances. All the remittances for accepted orders are eventually deposited for collection in United States banks outside of New York State. Multiple orders of liquor and wine are assembled by Gjertsen in Antwerp and transported in sea freight containers to the United States. The United States customs duty is paid by Chase in behalf of the Belgian shipper and the individual orders are then picked up and delivered to the New York residents by truck.

Mail order businesses like York have not been regulated or taxed by the state, and there is no provision in the new law for their licensing. The conduct of these businesses has assertedly resulted in an avoidance of New York state taxes as well as license fees and regulations. Businesses within the State of New York engaged in dealing in the sale and distribution of alcoholic beverages are regulated and licensed and, defendants urge, have been adversely affected by the expansion of the businesses of the mail order concerns. This law was enacted, according to a published legislative memorandum, to prevent what

was considered to be an unfair and unwise form of competition with New York state licensees, and to eliminate unfair tax advantages to out-of-state mail order firms selling alcoholic beverages to New York residents. An additional purpose was stated to be that of conforming the state alcoholic beverage tax law with the federal customs law.

The crucial question presented here is whether the New York state law impinges upon any constitutional rights of the plaintiffs. The plaintiffs suggest that their rights are contravened under the Commerce, the Export-Import and the Equal Protection Clauses of the Constitution. We conclude that they are not contravened for the reasons hereinafter set forth.

### I. *The Commerce Clause* [5]

The twenty-first amendment to the Constitution is dispositive of plaintiffs' claim that the disputed statute violates the Commerce Clause. That amendment to the Constitution, which repealed the eighteenth amendment, thereby ending the national prohibition of all manufacture, sale, transportation, importation or exportation of intoxicating liquors, provides that "the transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S.Const. amend. XXI, § 2. A series of decisions by the Supreme Court rendered shortly after the ratification of this amendment made it abundantly clear that the states were considered to have acquired plenary authority to deal with intoxicating beverages after importation. State Board of Equalization of State of California v. Young's Market Co., 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38 (1936); Mahoney v. Joseph Triner Corp., 304 U.S. 401, 58 S.Ct. 952, 82 L.Ed. 1424 (1938); Indianapolis Brewing Co. v. Liquor Control

---

5. Article I, § 8, cl. 3 of the Constitution provides:

The Congress shall have Power * * *
* * * * *

To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes * * *.

Comm., 305 U.S. 391, 59 S.Ct. 254, 83 L.Ed. 243 (1939); Finch & Co. v. Mc-Kittrick, 305 U.S. 395, 59 S.Ct. 256, 83 L.Ed. 246 (1939). Taken together, these decisions and their progeny present the plaintiffs with a formidable legal barrier to their success in this litigation. See Note, The Evolving Scope of State Power Under the 21st Amendment: The 1964 Cases, 19 Rutgers L.Rev. 759 (1965); 65 Colum.L.Rev. 153 (1965). Nevertheless, the plaintiffs press upon us, in urging us to strike down the New York statute in question and to enjoin its enforcement, contentions to the effect that their business activities are protected by the provisions of the Commerce Clause and rely on Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964) in support of their claims. In that case New York was prevented from terminating the business of a retail liquor dealer whose store was at New York's principal airport and who, under the sanction and supervision of the Bureau of Customs, acquired tax-free liquors for export from bonded wholesalers for resale exclusively to airline passengers, with delivery deferred until the latter arrived at foreign destinations. In holding them to be transactions within the protection of the Commerce Clause the Court said that both the twenty-first amendment and the Commerce Clause were parts of the same Constitution, and, like other provisions of the Constitution "each must be considered in the light of the other, and in the context of the issues and interests at stake in any concrete case." *Ibid* at 332, 84 S.Ct. at 1298. Since ultimate delivery and use of the liquor there was in a foreign country and not in New York, the decision can hardly furnish plaintiffs with any ground for support in this case. Similarly, Ammex Warehouse Co. of San Ysidro, Inc. v. Dept. of Alcoholic Beverage Control, 224 F.Supp. 546 (S.D.Cal. 1963), aff'd per curiam, 378 U.S. 124, 84 S.Ct. 1657, 12 L.Ed.2d 743 (1964), and Epstein v. Lordi, 261 F.Supp. 921 (D.N.J.1966), aff'd per curiam, 389 U.S. 29, 88 S.Ct. 106, 19 L.Ed.2d 29 (1967),

involved liquor passing *through* rather than *into* the regulating states. Indeed, the district court stated in *Epstein*:

> [New Jersey] also has the power to prohibit or to condition in the most discriminatory fashion the importation into its territory of all intoxicants "for delivery or use" within New Jersey, as that phrase is employed in the Twenty-first Amendment (citing cases).

> Where, however, the liquor is not brought into the State for "delivery or use therein", regulation cannot be predicated upon the Amendment. 261 F.Supp. at 932.

The facts in the case before us most closely resemble those in American Travelers Club, Inc. v. Hostetter, 219 F.Supp. 95 (S.D.N.Y.1963), where plaintiff, a Delaware corporation, distributed order forms to departing travelers for liquor purchases and made all subsequent arrangements for its importation and the delivery of the liquor in New York State. Distinguishing *Idlewild*, the court stated:

> [There] liquor was purchased and paid for by departing travelers in New York City, but there was no delivery or use until arrival at the foreign destination. The Twenty-first Amendment was found inapplicable because there was no "delivery or use" within New York * * *.

> The instant case, however, is different * * *. New York's action is directed at the importation of liquor for delivery and use within the State, so there is here no question but that the Twenty-first Amendment is applicable. 219 F.Supp. at 107. (Footnotes omitted).

Plaintiffs' attempt to distinguish *American Travelers* from this case by a sales-agency discussion is of no constitutional significance since, under the aforementioned cases interpreting the twenty-first amendment, alcohol shipped into the state for use is as subject to state control as alcohol sold in the state. The fact that, in contrast to the American Travelers

Club, House of York kept itself physically out of New York does not, as it strenuously contends, bring it within the intendment of the Supreme Court's statement in Seagram & Sons v. Hostetter, 384 U.S. 35, 42–43, 86 S.Ct. 1254, 1259–1260, 16 L.Ed.2d 336 (1966):

> We need not now decide whether the mode of liquor regulation chosen by a State in such circumstances could ever constitute so grave an interference with a company's operations elsewhere as to make the regulation invalid under the Commerce Clause.

The Court's footnote reference to United States v. Frankfort Distilleries, Inc., 324 U.S. 293, 299, 65 S.Ct. 661, 89 L.Ed. 951 (1945), and the citation of Baldwin v. G. A. F. Seelig, Inc., 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935), show that the Court was referring to laws affecting the conduct of liquor manufacturers or dealers with respect to each other outside the state or the prices at which they buy or sell outside the state, and was not intimating that simply by remaining outside the state a purveyor could escape from "the state's full authority to determine the conditions upon which liquor can come into its territory and what will be done with it after it gets there * * *" United States v. Frankfort Distilleries, Inc., *supra* 324 U.S. at 299, 65 S.Ct. at 664. Nor is their discussion of Essenfeld Bros. Inc. v. Hostetter, 40 Misc.2d 99, 242 N.Y.S.2d 756 (1963), aff'd, 14 N.Y.2d 47, 248 N.Y.S.2d 45, 197 N.E.2d 535 (1964), relevant. That case, construing the former Alcoholic Beverage Control Law, did not discuss the constitutional issues presented to us here. Additionally, and notwithstanding plaintiffs' suggestions to the contrary, relevant constitutional issues were considered by a three-judge court in the *American Travelers* case, and the views there expressed are consonant with our own.

■ Thus, while it is clear that the twenty-first amendment does not abrogate the Commerce Clause, the states have wide latitude in regulating liquors coming into, rather than through, the state, and such latitude encompasses the statute now before us.

## II. *The Export-Import Clause* [6]

■ Plaintiffs' argument that this tax on alcoholic beverages is an unconstitutional tax on imports is equally without merit. Far from being a tax on imports, the tax is imposed on liquor sold or used within the state, including liquor produced in New York and liquor brought in from other states. Moreover, the tax is levied only after the goods become part of the general mass of property in the state through such sale or use and not while they remain susceptible to classification as imports. The very cases cited by the plaintiffs strengthen and do not impair the validity of the New York statute in this case.

Dept. of Revenue v. James B. Beam Distilling Co., 377 U.S. 341, 84 S.Ct. 1247, 12 L.Ed.2d 362 (1964), a holding upon which plaintiffs rely, held that the State of Kentucky could not tax imported Scotch whisky while it remained in unbroken packages in the hands of the original importer and prior to his resale or use thereof. While the Court found the tax to be an improper tax on imports in violation of the Export-Import Clause of the Constitution, it reaffirmed the state's plenary powers under the twenty-first amendment not only to regulate and control by taxation or otherwise, the distribution, use, or consumption of intoxicants within her territory after they have been imported, but its powers to prohibit completely the importation of some or all intoxicants destined for distribution, use, or consumption within its borders. See Dept. of Revenue v. James B. Beam Distilling Co., *supra* at

---

6. Article I, § 10, cl. 2 of the Constitution provides:

> No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing it's inspection laws * * *.

346, 84 S.Ct. 1247. The Court also referred to statutes passed prior to the eighteenth amendment and which it said were still in force, giving the states a large degree of autonomy in regulating the importation and distribution of intoxicants.[7] *Ibid* at 345, n. 7, 84 S.Ct. 1247. In following the *ratio decidendi* of Brown v. Maryland, 25 U.S. (12 Wheat.) 419, 6 L.Ed. 678 (1827), which held that imported goods in original packages may not be taxed, *Beam* in no way altered, and indeed reaffirmed, the second principle of *Brown* that imports cease to be immune from tax when they have "become incorporated and mixed up with the common mass of property in the country." 25 U.S. at 441. ["Then,"] added Chief Justice Marshall, "it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the State; but while remaining the property of the importer, in his warehouse, in the original form or package, in which it was imported, a tax upon it is too plainly a duty on imports, to escape the prohibition in the Constitution." *Ibid* at 441. These doctrines have remained substantially valid to this day. Their reexamination by the Supreme Court in Youngstown Sheet & Tube Co. v. Bowers, 358 U.S. 534, 79 S.Ct. 383, 3 L.Ed.2d 490 (1959), does not impair the soundness of their application here. Unlike the tax in *Beam*, this tax is levied after the importation of goods into the state.[8]

Thus, not being a tax on imports, this tax is within the power of New York as defined by the twenty-first amendment. *Beam* supports this conclusion rather than that suggested by plaintiffs.

## III. *Equal Protection Clause*

■ Plaintiffs' final contention— that the tax law arbitrarily discriminates between those New York residents who personally carry back liquor from foreign travels and those who do not— can be dealt with summarily. Certainly *Epstein, supra,* and *Young's Market, supra,* affirm the power of a state to regulate or prohibit as selectively as it sees fit. This court need not speculate on the many possible reasons a state might have for exempting personally carried articles. Its desire to coordinate its policies with the federal exemption is an entirely proper legislative purpose, and certainly the inspection and supervision problems inherent in mailing are obviated where personal inspection is feasible. But its indulgence in one case does not require it to be indulgent in another. It is sufficient to say that the exemption

---

7. 27 U.S.C. § 121. *State statutes as operative on termination of transportation; original packages.* All fermented, distilled, or other intoxicating liquors or liquids transported into any State or Territory or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such State or Territory be subject to the operation and effect of the laws of such State or Territory enacted in the exercise of its police powers to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise.

27 U.S.C. § 122. *Shipments into states for possession or sale in violation of state law.* The shipment or transportation, in any manner or by any means whatsoever, of any spirituous, vinous, malted, fermented, or other intoxicating liquor of

any kind, from one State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, into any other State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, or from any foreign country into any State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, which said spirituous, vinous, malted, fermented, or other intoxicating liquor is intended, by any person interested therein, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, is hereby prohibited.

8. See n. 4 *supra*; Ch. 242 Laws of N.Y. § 6(a).

at issue does not fall within the class of arbitrary and irrational legislation which the fourteenth amendment condemns.[9]

The complaint is dismissed with prejudice. It is so ordered.

9. Amendment XIV, § 1, of the Constitution provides:
   * * * [N]or shall any State * * * deny to any person within its jurisdiction the equal protection of the laws.