Joseph A. Sabaeite, J.
These motions (one to dismiss a complaint and the other for judgment on the pleadings or, in the alternative, for summary judgment) arise out of two separate actions, each involving a different aspect of a comparatively recent business practice in the tourist and liquor industries. Although the parties are not the same, the actions involve common questions of law arising out of a single set of facts. Consequently, the motions are hereby consolidated.
The first action, brought by the Attorney-General in the name of the People of the State of New York against Tourists International, S. A., Tourists International, Inc., and Railway Express Agency, Inc., seeks to enjoin said defendants from performing certain business activities which are alleged to violate various sections of the Alcoholic Beverage Control Law.[1] The complaint alleges that since about January 1, 1961, defendants, none of whom possesses a license to traffic in alcoholic beverages, have engaged in the following business activities. They send into the State, and cause to be published therein, advertisements for liquor which, under certain circumstances, may be obtained from foreign countries “ duty free ” by those about to travel outside the United States. They also prepare and distribute to the public, by mail and through travel agencies, certain “ order kits ’ ’ which facilitate purchase of the liquor. These kits contain a liquor list, an order form, a blank check payable to defendant Tourists International, S. A., and instructions for the use of these items. The prospective traveler is instructed to select his liquor from the list, fill out the order form and, when outside the United States, mail the order and check to defendant Tourists International, S. A., in Geneva, Switzerland. When he returns to the United States, the traveler declares his purchase of liquor and secures U. S. Customs Form 3351 which he mails to the Belgian Agent of defendant Railway Express. Upon receipt of Form 3351, this agent prepares the required shipping documents and arranges for the delivery of the liquor to the purchaser’s home. The liquor, consigned to the purchasers, is sent by ship to New York City, where it is received at shipside by Railway Express, which clears it through Customs and *101 delivers it to the purchasers. The purchasers who, in the main, are tourists, are obviously not licensed to traffic in alcoholic beverages. In brief, these are the activities which plaintiff seeks to enjoin. Defendants move to dismiss the complaint on the ground that it does not state facts sufficient to constitute a cause of action.
The second action, brought by Esscnfeld Bros., Inc., and Railway Express against the Chairman and Commissioners of the State Liquor Authority, seeks a declaratory judgment and other relief. The complaint makes the following allegations. Plaintiffs hold permits issued by defendants for the carrying of alcoholic beverages within the State of New York. Since about 1958, they have engaged in the business of delivering to New York residents alcoholic beverages purchased by those residents while outside the United States and shipped by those residents as consignors to themselves as consignees. On December 28, 1962, defendants announced that the Alcoholic Beverage Control Law prohibits a person who has travelled outside the State from shipping alcoholic beverages into the State, unless he personally accompanies the shipment. Thereafter, defendants informed the United States Commissioner of Customs that such shipments violated New York law. As a result, the Commissioner then notified plaintiffs that as of March 1, 19G3 they would not be permitted to transport such shipments into New York. Consequently, since that date plaintiffs have been unable to conduct their normal business activities in this field. Plaintiffs seek an injunction against defendants’ interference with those activities and a declaratory judgment concerning their legality. Plaintiffs move for judgment on the pleadings or, in the alternative, for summary judgment.
The sole questions presented by these motions are (1) whether the movants’ activities are in violation of the Alcoholic Beverage Control Law and, if so (2) whether that law, to the extent that it prohibits those activities, is unconstitutional.
The policy of the State and the purpose of the Alcoholic Beverage Control Law is set out in section 2, which reads as follows: “ It is hereby declared as the policy of the state that it is necessary to regulate and control the manufacture, sale and distribution within the state of alcoholic beverages for the purpose of fostering and promoting temperance in their consumption and respect for and obedience to law.” The Court of Appeals, in a case construing this very statute, has stated that “In the interpretation of statutes, the spirit and purpose of the act and the objects to be accomplished must be considered. The legislative intent is the great and controlling principle. *102 Literal meanings of words are not to be adhered to or suffered to £ defeat the general purpose and manifest policy intended to be promoted; ’ all parts of the act must be read and construed together for the purpose of determining the legislative intent, and if the statute is ambiguous and two constructions can be given, the one must be adopted which will not cause objectionable results or cause inconvenience, hardships, injustice or mischief or lead to absurdity” (People v. Ryan, 274 N. Y. 149, 152).
Those sections of the Alcoholic Beverage Control Law which the Attorney-General alleges prohibit the movants’ activities read in part as follows:
Section 100 (subd. 1) provides that££ No person shall * * * sell * * * any alcoholic beverage within the state without obtaining the appropriate license therefor”.
Section 102 (subd. 1, par. [a]) provides that££ No person shall send or cause to be sent into the state,any * # * publication of any kind containing an advertisement or a solicitation of any order for any alcoholic beverages unless such person shall be duly licensed hereunder to traffic in alcoholic beverages.”
Section 102 (subd. 1, par. [b]) is the same, except that it prohibits the publication by unlicensed persons of such advertisements or solicitations within the State.
Section 102 (subd. 1, par. [c]) provides that ££ No alcoholic beverages shall be shipped into the state unless the same shall be consigned to a person duly licensed hereunder to traffic in alcoholic beverages.”
Section 102 (subd. 1, par. [d]) provides that “No common carrier or other person shall bring or carry into the state any alcoholic beverages, unless the same shall be consigned to a person duly licensed hereunder to traffic in alcoholic beverages.”
Section 102 (subd. 1, par. [e]) provides that: “ Subdivisions (c) and (d) * * * shall apply to alcoholic beverages, * * * whether intended for personal use, as well as otherwise, and to interstate, as well as intrastate, shipments or carriage. ’ ’
The Attorney-General argues that the advertising and soliciting of orders for alcoholic beverages constitute violations of sections 100 (subd. 1), 102 (subd. 1, par. [a]) and 102 (subd. 1, par. [b]). With respect to section 100 (subd. 1), which refers only to the “ selling ” of alcoholic beverages within the State, it should be noted that the words £ ‘ to sell ’ ’ are defined by section 3 (subd. 28) to include the solicitation of an order. The Attorney-General also argues that the transportation and delivery of alcoholic beverages as admitted by plaintiffs in the *103 second action, constitute violations of sections 102 (subd. 1, par. [c]) and 102 (subd. 1, par. [d]) as explained by section 102 (subd. 1, par. [e]).
In the light of the legislative policy mentioned in the statute and the principles of statutory interpretation set forth in the Ryan case (supra), does the Alcoholic Beverage Control Law prohibit the practices described? This court holds that it does not.
The Attorney-Gí-eneraPs argument that sections 100 (subd. 1), 102 (subd. 1, par. [a]) and 102 (subd. 1, par. [b]) prohibit the advertising and soliciting activities mentioned must be rejected for a number of reasons. First, the legislative purpose of the statute was to regulate the manufacture, sale and distribution of alcoholic beverages within the State. Here, the parties to the contract of sale have clearly demonstrated their intention that title should pass outside the State, where the order is placed and accepted, the payment is received, and the liquor purchased is appropriated to the contract. Under the law, it is their intention which controls. (Since their intention is clear, there is no need to resort to the rules for ascertaining intention contained in section 100 of the Personal Property Law.) Moreover, the prohibition against advertising and soliciting orders should, by the same token, apply only with respect to alcoholic beverages to be sold within the State. Here, not only are the sales consummated outside the State, but the orders are placed outside the State as well.
Second, if the Legislature had intended to prohibit the solicitation of orders even when the sales were to occur outside the State, it could easily have so provided. Yet the sections in question contain no language from which such an intent may be inferred. The distinction which may be drawn between sales made within the State and sales made without the State was surely not unknown to the Legislature. Indeed, one section was expressly made to apply “ irrespective of whether such sale is to be made within or without the state” (§ 93). The failure of the Legislature to include similar language in sections 100 (subd. 1), 102 (subd. 1, par. [a]) and 102 (subd. 1, par. [b]) may not be deemed meaningless; indeed, from that failure it may logically be inferred that the Legislature did not intend those sections to apply to situations such as the one present here, where the sale of the alcoholic beverages takes place outside the State, and the purchaser places his order for those beverages only when outside the State.
Third, the Court of Appeals has held that nothing in the statute prevented a New York resident who had obtained aleo *104 holic beverages in Connecticut from bringing those alcoholic beverages back into New York (People v. Ryan, supra). Since a New York resident may lawfully leave New York, purchase liquor at a Connecticut store, and return to New York with the liquor, it would seem unreasonable to argue that the owner of that Connecticut store may not lawfully advertise in New York in the hope of persuading New York residents to purchase liquor at his store, rather than elsewhere in Connecticut. Other examples may be cited. Section 980 of the Penal Law provides that any person ‘£ who persuades another to visit any building * * * used for the purpose of gambling, in consequence whereof such other person gambles therein, is guilty of a misdemeanor ’ ’. Surely this section could not be invoked against travel agents who persuade prospective vacationers to go to Las Vegas or Reno, so that they may gamble at casinos operating lawfully there. Similarly, the advertising and soliciting activities of which the Attorney-General complains do not violate the Alcoholic Beverage Control Law, since the orders are placed and the sales occur outside the State.
With respect to the transportation and delivery activities of the movants, the Attorney-General argues that they are clearly prohibited by sections 102 (subd. 1, par. [c]) and 102 (subd. 1, par. [d]), as explained by section 102 (subd. 1, par. [e]). It should be pointed out, however, that these sections have rarely been interpreted, and that the last time they were considered by a court, they were found to be anything but clear; indeed, the court said that ££ The interpretation of these three subdivisions standing alone would not be easy” and also pointed out that portions thereof involved “ a patent contradiction of terms” (Matter of Wylegala v. Railway Express Agency, 177 Misc. 1071, 1073, affd. 264 App. Div. 937).[2] Nevertheless, when they are considered together with other legal provisions and in the light of the purpose of the statute, they do not appear to prohibit the activities complained of here.
First, section 116 (cl. [c]) provides in part that “ alcoholic beverages * * * may be delivered from a steamship * * * to a purchaser for purposes of consumption * * * by any bona fide trucking agency holding a permit under this *105 chapter.” Essenfeld Bros, and Bailway Express both hold such permits and are engaged in delivering alcoholic beverages from steamships to purchasers for purposes of consumption. This, section 116 (cl. [c]) specifically allows them to do. Section 102 may not be interpreted so “as to deny * * * the right to transport which is expressly granted by section 116 ” (People v. Ryan, supra, p. 153). Indeed, section 116 (cl. [b]) provides that ‘ ‘ alcoholic beverages owned by a person may be transported from place to place not for purposes of sale ”. If these words were to be interpreted as literally as the Attorney-General wishes the words of section 102 to be interpreted, then the transportation activities in question would be upheld, since the movants transport liquor owned by a person (the purchaser) and do not do so for purposes of sale (the sale already having taken place in Europe). Under the view taken here, however, it is section 116 (cl. [c]), not section 116 (cl. [b]), which applies.
Second and most important, it is conceded by all parties that no law prohibits a New York resident from physically bringing with him into the State one gallon of alcoholic beverage purchased by him outside the country for his personal use. It is only when the traveler relieves himself of the burden of physically carrying the liquor from the steamship to his home that there is any question of a violation of the statute. But if such a distinction is to be recognized in the absence of a clear and uncontradicted legislative provision to that effect, it must be on the ground that it is somehow in accord with the purpose for which the statute was enacted. How it would “ foster and promote temperance ” in the consumption of alcoholic beverages to allow a traveler to bring such beverages with him physically into the State, while prohibiting him from employing a carrier to perform the task for him, has not been explained. In performing the transportation and delivery activities involved here, movants are not violating the law, and this result is not changed by the fact that they are afforded the opportunity to perform these services because of the advertising and soliciting activities already discussed. It should also be noted that since the carriers transport alcoholic beverages already owned by the purchasers, they are acting merely as the agents of those purchasers, and are not engaged in the “ commercial importation ” which the Court of Appeals has stated that the statute was intended to prohibit (People v. Ryan, supra, p. 154).
Finally, it should be made clear that this decision is not inconsistent with American Travelers Club v. Hostetter (U. S. Dist. Ct., S. D. N. Y., June 24, 1963, Medina, C. J.) where a statutory three-Judge District Court, after taking testimony, held that a *106 plan by which duty-free liquor from Europe was delivered to New York residents who had travelled abroad violated the Alcoholic Beverage Control Law. In that case, as the District Court emphasized, “ the factual situations and the precise legal points” which were involved were “significantly different” from those involved here. There, liquor orders and checks were received by plaintiff at its New York City office; plaintiff deposited the checks in its New York bank; owning no liquor from which the orders might be filled, plaintiff ordered the necessary liquor from a Belgian company, paying for it with its own check; and the prospective travelers who had originally placed the orders were not the consignees of the liquor which was shipped to New York. Presented with these facts, the Federal court concluded that the plaintiff was engaged in “an independent business whereby it purchases liquor from a third party, taking title in its own name, and that it contracts to sell such liquor to its customers at a fixed price ” and that it was “ engaged in the business of importing liquor for resale,” thus violating the Alcoholic Beverage Control Law. If this court had been presented with the same facts, its holding would have been the same as that of the Federal court. The facts of the present case, however, require a different result.
In light of the interpretation of the statute adopted here, no constitutional question is reached. The motions for dismissal of the complaint and for summary judgment are granted.

. Hereafter, unless otherwise specified, all sections cited are from, the Alcoholic Beverage Control Law.

. On the subject of just how clear these sections are, it may be worthwhile to note that within recent months, the Legislature has had before it two bills concerning the business practice involved here. One would have specifically allowed the practice, with certain modifications (Senate Bill No. 3222, February 21, 1963 and Assembly Bill No. 4503, February 19, 1963); the other would have specifically forbidden it (Senate Bill No. 3697, February 27, 1962). Neither bill was passed.