**UNITED STATES of America,**

v.

**Theodore BLACK, Irving Snow, Harry Snow, Harold Halpern, Henry Shapiro, Jerome Kurtz and Peter Martella, Defendants.**

**No. 67 Cr. 61.**

United States District Court
S. D. New York.

Oct. 7, 1968.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, New York City, for the United States; Robert L. Latchford, Asst. U. S. Atty., of counsel.

Jacob P. Lefkowitz, New York City, for defendants Theodore Black, Harry Snow and Jerome Kurtz.

Foley, Hickey & Currie, New York City, for defendant Irving Snow; John M. Foley, New York City, of counsel.

Maurice Edelbaum, New York City, for defendants Harold Halpern and Henry Shapiro.

## OPINION

WEINFELD, District Judge.

The indictment in this case centers about the alleged operation of a gambling ship. Counts 1 and 2 charge all the defendants with the operation of a gambling establishment on such a ship in violation of 18 U.S.C., section 1082; count 3 charges the defendants I. Snow and Halpern with the use of a facility of interstate commerce to promote a gambling activity illegal under New York state law, in violation of 18 U.S.C., section 1952; and count 4 charges all defendants with conspiracy to violate the foregoing statutes. All defendants except Martella move to dismiss the indictment under Rule 12 of the Federal Rules of Criminal Procedure, and, in the event of a denial, for pretrial relief under Rules 7, 16 and 17.

## I. THE MOTION TO DISMISS THE INDICTMENT

The indictment is challenged upon statutory and constitutional grounds. In support of the motion, defendants' attorneys submit their own affidavits, based upon information and belief, setting forth factual details as to the ship's sailing, the nature of the cruise, passenger activities and other matters relating to the indictment charges. In further support of the dismissal motion, the defendants seek an inspection of the grand jury minutes, which it is alleged will reveal the following: that T.S.S. Olympia, a vessel of the Greek Line, Inc., sailed from New York harbor on a nonstop weekend voyage, described by counsel as a cruise "to nowhere" ; that it departed on Friday evening, November 4, 1966 and returned to the port of origin on Monday morning, November 7; and that while the ship was beyond twelve miles from the United States coast line, a fraternal group known as "The Sons of Italy" engaged in gambling activities for eleemosynary purposes in a common area set aside by the ship's master.

### A. *Arguments with Respect to Section 1082*

■ 1. *Statutory arguments.* The defendants deny both that the activities described above constituted "gambling" and that the ship was "used principally for the operation of one or more gambling establishments" within the meaning of section 1082.[1] This contention is premature. It may well be that section 1082 applies only to "large-scale commercial gambling," [2] and that Olympia harbored so little gambling activity that it was not used "principally" for gambling within the statute. But these are fact issues not before the Court on this motion. The validity of the indictment is to be tested by its allegations, not by defense counsel's forecast of the ultimate trial evidence. The indictment is sufficient upon its face, and is not subject to dismissal on the basis of factual questions, the resolution of which must await trial. This branch of the motion fails, and the accompanying motion for inspection of grand jury minutes is denied.

■ The defendants' next statutory challenge to the sufficiency of the indictment rests upon the assertion that the alleged proscribed gambling activities occurred aboard Olympia when it was beyond the twelve-mile limit. The contention is that the statute applies to a gambling ship on the high seas only when it is "otherwise under or within the jurisdiction of the United States" ; that the quoted phrase limits the Act to vessels on the high seas,[3] and only when they are within the territorial waters of the Unit-

---

1. 18 U.S.C. sec. 1082(a) provides:
   "It shall be unlawful for any citizen or resident of the United States, or any other person who is on an American vessel or is otherwise under or within the jurisdiction of the United States, directly or indirectly—
   (1) to set up, operate, or own or hold any interest in any gambling ship or any gambling establishment on any gambling ship; or
   (2) in pursuance of the operation of any gambling establishment on any gambling ship, to conduct or deal any gambling game, or to conduct or operate any gambling device, or to induce, entice, solicit, or permit any person to bet or play at any such establishment,
   if such gambling ship is on the high seas, or is an American vessel or otherwise under or within the jurisdiction of the United States, and is not within the jurisdiction of any State."
   For definitions, see 18 U.S.C. sec. 1081.

2. See H.R.Rep.No. 1700, 80th Cong., 2d Sess. 2.

3. The term "high seas" encompasses all of the ocean "without the boundaries of [the] low-water mark," In re Ross, 140 U.S. 453, 471, 11 S.Ct. 897, 902, 35 L.Ed. 581 (1891). *Cf.* United States v. Rodgers, 150 U.S. 249, 254, 14 S.Ct. 109, 37 L.Ed. 1071 (1893); United States v. Newark Meadows Imp. Co., 173 F. 426, 428 (C.C.S.D.N.Y.1909). See also The Abby, 1 Fed.Cas. 26, 27 (No. 14) (C.C. D.Mass.1818) (Story, Cir. J.) ; DeLovio v. Boit, 7 Fed.Cas. 418, 428 (No. 3776) (C.C.D.Mass.1815) (Story, Cir. J.); United States v. Ross, 27 Fed.Cas. 899, 900 (No. 16196) (C.C.D.R.I.1813) (Story, Cir. J.).

ed States, i. e., within the three-mile limit [4] but in no event beyond the twelve-mile limit.[5]  The argument proceeds upon a claim that section 1082 was enacted to prevent the establishment of floating gambling casinos on ships anchored just off the coast of the United States, and that Congress, in effect, chose to overlook the few instances where such ships anchored beyond the three-mile limit.

■ Defendants have misread the statute.  It is true that it was enacted to outlaw the gambling ship, a device employed to evade state gambling laws.[6] But they overlook its component elements.  First, the Act applies to American citizens, American residents, and other persons either on an American vessel or otherwise subject to the jurisdiction of the United States.  Second, it prohibits both operating a gambling establishment on a gambling ship and either running a gambling game or inducing any person to bet or play at such a gambling establishment.  Third, it requires that the ship be either on the high seas, or an American vessel, or otherwise under or within the jurisdiction of the United States.  Finally, it excludes from its coverage ships within the jurisdiction of any State.[7]

The interpretation urged by defendants would, in large measure, nullify the objective of the Act to reach conduct oc-curring on the high seas and beyond the territorial waters of the United States. Indeed, to accept their narrow interpretation would require the insertion of the word "territorial" before "jurisdiction" in the phrase "or otherwise under or within the jurisdiction of the United States."  Under section 7 of Title 18, the special maritime and territorial jurisdiction of the United States extends to the high seas and any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State. Nothing has been presented to suggest that Congress intended section 1082 to be of lesser reach.

The very language of section 1082(a) rebuts defendants' interpretation.  The comma after "if such gambling ship is on the high seas," followed by "or is an American vessel," indicates that the phrase "or [is] otherwise under or within the jurisdiction of the United States" enlarges rather than restricts the jurisdictional scope of the statute.  One obvious purpose of the "otherwise" phrase is to ensure jurisdiction over violations not involving American citizens or residents, as, for example, in the case of a foreign ship or foreign citizen's conducting gambling operations within the three-mile limit.  This aspect of defendants' motion must also fail.

4.  See Cunard S.S. Co. v. Mellon, 262 U.S. 100, 122, 43 S.Ct. 504, 507, 67 L.Ed. 894, 27 A.L.R. 1306 (1923): "It now is settled * * * that the territory subject to [United States] jurisdiction includes * * * a marginal belt of the sea extending from the coast line outward a marine league, or three geographic miles."

5.  International and domestic law recognizes a twelve-mile limit for revenue, fishing-rights, and customs purposes. See The Geneva Convention on the Territorial Sea and the Contiguous Zone, art. 24 (1958); Tariff Act of 1922, sec. 581, 42 Stat. 979; Revenue Act of 1799, sec. 99, 1 Stat. 700.  Cf. Manchester v. Com. of Massachusetts, 139 U.S. 240, 258, 11 S.Ct. 559, 35 L.Ed. 159 (1891); The Apollon, 22 U.S. (9 Wheat.) 362, 371, 6 L.Ed. 111 (1824) (Story, J.); Church v. Hubbart, 6 U.S. (2 Cr.) 187, 235, 2 L.Ed. 249 (1804) (Marshall, C. J.).  See generally 2 D.P. O'Connell, International Law 697–704 (1965); P.C. Jessup, The Law of Territorial Waters and Maritime Jurisdiction 57–60 (1927); cf. 2 L. Oppenheim, International Law sec. 71, at 237 n. 2 (7th ed. H. Lauterpacht 1952).

6.  See H.R.Rep.No. 1700, supra note 2, at 1.

7.  An American vessel, as defined in the Act, includes both ships licensed in the United States and ships not documented in any country but under effective control, whether by ownership, charter or otherwise, of American citizens, residents or corporations.  18 U.S.C. sec. 1081.

**2.** *Constitutional arguments.* Defendants advance two constitutional claims, but these, too, are without substance. First, they assert that since the vessel was not an American ship and the gambling activity occurred beyond the twelve-mile limit, the United States was without jurisdiction to declare criminal the acts of those aboard. However, the indictment charges that the defendants were American citizens and residents. It is settled that citizenship alone, apart from locus, suffices to confer upon the United States jurisdiction over extraterritorial acts. Whether based on concepts of personal jurisdiction or otherwise, the power of Congress to enact statutes in the national interest extending to all its citizens—even those upon the high seas—cannot be doubted.[8]

Defendants also claim constitutional infirmity of the statute for vagueness. Here the argument centers about the definition of a gambling ship in section 1081 as one used "principally" for the operation of a gambling establishment. The basic question is whether the statute fails to give fair notice to a person of ordinary intelligence that the Act proscribes given conduct.[9] "Principally" is a word of ordinary usage, readily understood; a well-intentioned individual should have no difficulty in grasping its meaning.[10] There is authority that use of the word "principally" will not necessarily invalidate a statute.[11] Moreover, where a statute plainly reaches the general class of cases to which it is directed, the statute will not be struck down as vague, "even though marginal cases could be put where doubts might arise."[12] In advance of trial the Court will not seek to determine whether the nature and extent of the gambling aboard Olympia—questions of fact intertwined with the issues on the merits—were such as to preclude the constitutional application of the statute to defendants' conduct.

The motion to dismiss upon constitutional grounds is denied.

### B. *Arguments With Respect to Section 1952*

Count 3 of the indictment charges two defendants with the use of a facility in interstate commerce with intent to promote a business enterprise involving gambling, to wit, the activity of persuading to gamble, rendered unlawful in New York by section 980 of the

---

**8.** Blackmer v. United States, 284 U.S. 421, 436–438, 52 S.Ct. 252, 76 L.Ed. 375 (1932) (failure of American citizen to return from abroad to testify in federal court punishable as contempt); United States v. Bowman, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149 (1922) (fraud upon United States, committed while on the high seas and in a foreign country); Rocha v. United States, 288 F.2d 545 (9th Cir.), cert. denied, 366 U.S. 948, 81 S.Ct. 1902, 6 L.Ed.2d 1241 (1961) (sham marriages entered into out of the country for purpose of defrauding United States); United States v. Baker, 136 F.Supp. 546, 547–548 (S.D.N.Y.1955) (Murphy, J.). Cf. Steele v. Bulova Watch Co., 344 U.S. 280, 282, 73 S.Ct. 252, 97 L.Ed. 252 (1952); Foley Bros. v. Filardo, 336 U.S. 281, 284, 69 S.Ct. 575, 93 L.Ed. 680 (1949); Vermilya-Brown Co. v. Connell, 335 U.S. 377, 381, 69 S.Ct. 140, 93 L.Ed. 76 (1948); Skiriotes v. State of Florida, 313 U.S. 69, 73, 61 S.Ct. 924, 85 L.Ed. 1193 (1941) (dictum).

**9.** United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954).

**10.** "[F]ew words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." Boyce Motor Lines v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 330–331, 96 L.Ed. 367 (1952).

**11.** United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954).

**12.** Id. at 618, 74 S.Ct. at 812.

old Penal Law.[13] The defendants' sole attack on this count of the indictment is that their conduct was not criminal under section 980 because the gambling occurring as the result of their persuasion took place beyond the territorial jurisdiction of New York. The claim is both that New York lacks the power to punish extraterritorial conduct, and that the legislature has not sought to do so. However, a fair reading of section 980 indicates that the act of persuasion must occur within the state—which disposes of the constitutional challenge— and that the offense is complete upon a person entering a gambling place, including "any vessel or float," and committing acts of gambling, if illegal where committed.[14] Judge Cardozo's opinion in People v. Werblow [15] is not to the contrary. It holds that "where the constituent acts which in their union are the crime have been committed, some of them in New York and some in another state, the courts of New York, if they can catch the offender, may punish for the offense" ; [16] and it therefore supports the position of the government in this case that the act of persuasion is punishable in New York even if the other elements of the crime occur out of state. Moreover, the affidavits of defendants' own attorneys indicate that the entry upon the gambling vessel occurred within New York.

## II. OTHER MOTIONS UNDER RULES 7, 16 and 17

The motion of defendants Black, H. Snow and Kurtz for discovery and inspection of their grand jury testimony is granted.

The motion of the same defendants for discovery and inspection of tape recordings and transcriptions is denied upon the government's representation that it has no such recordings or transcriptions.

The motion of defendants Halpern and Shapiro for production and inspection of various papers and documents of the Greek Line, Inc., and of correspondence between the Line and government officials, is granted to the extent consented to by the government.

The various motions for a bill of particulars are granted only to the following extent:

1. With respect to count 1, the approximate date when the government will claim that each defendant commenced to own and hold an interest in the alleged gambling establishment, and a general description of the interest allegedly owned or held by each defendant in the alleged gambling establishment.

2. With respect to count 2, a general description of the gambling games conducted and gambling devices operated aboard Olympia, and a general description of the means employed to solicit and

---

13. Penal Law, sec. 980, provided:
    "A person, who persuades another to visit any building or part of a building, or any vessel or float, occupied or used for the purpose of gambling, in consequence whereof such other person gambles therein, is guilty of a misdemeanor; and in addition to the punishment prescribed therefor, is liable to such other person in an amount equal to any money or property there lost by him at play, to be recovered in a civil action."
    The provision is now embodied in the new Penal Law, sec. 225.05 (McKinney's Consol.Laws c. 40, 1967).

14. Defendants rely upon People v. Tourists International, S.A., 40 Misc.2d 99, 242 N.Y.S.2d 756 (Sup.Ct.1963), for its observation that sec. 980 could not apply to a travel agent who recommends a Las Vegas vacation to his customers. Aside from the facts that the observation was dictum and the decision was reversed on other grounds, 20 A.D.2d 41, 245 N.Y.S.2d 297 (1st Dep't 1963), appeal dismissed, 14 N.Y.2d 650, 249 N.Y.S.2d 435, 198 N.E.2d 604 (1964), the case is inapposite because in its hypothetical the subsequent gambling would be legal, whereas here the gambling, according to the indictment, constituted a federal offense under sec. 1082. Cf. N.Y.Pen.Law secs. 100.00–.20 (McKinney 1967) (criminal solicitation).

15. 241 N.Y. 55, 148 N.E. 786 (1925).

16. Id. at 60, 148 N.E. at 789.

permit persons to bet and play at the alleged gambling establishment aboard ship.

3. With respect to count 3, a general description of the means used to promote and facilitate the gambling activity referred to therein, and a general description of the methods used to persuade persons to visit the vessel for gambling.

The application of the defendant I. Snow for an extension of time to move under Rules 7(f), 16 and 17 is granted, such motion to be made within ten (10) days from the date hereof.