# DE BARY & COMPANY v. STATE OF LOUISIANA.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 696.   Motion to affirm submitted January 10, 1913.—Decided January 27, 1913.

Under the Wilson Act of August 8, 1890, 26 Stat. 313, a State may impose a license for regulating the sale of liquor in original packages brought from foreign countries, as well as that brought from other States.

Where a statute refers to "all" liquors transported into a State or Territory the point of origin is immaterial and the law applies to liquors alike from other States and from foreign countries.

The intent of Congress in enacting the Wilson Act was to give the several States power to deal with all liquors coming from outside to within their respective limits, and this purpose would be defeated if the act were construed so as not to include liquors from foreign countries as well as from other States.

An act of Congress, such as the Wilson Act, will not be so construed as to confer upon foreign producers of an article a right specifically denied to domestic producers of that article.

130 Louisiana, 1090, affirmed.

---

THE facts, which involve the construction of the Wilson Act, are stated in the opinion.

*Mr. J. D. Rouse, Mr. William Grant* and *Mr. William B. Grant* for plaintiff in error.

*Mr. R. G. Pleasant,* Attorney General of the State of Louisiana, *Mr. William W. Westerfield* and *Mr. Edward Righlor* for defendant in error.

Memorandum opinion, by direction of the court, by MR. CHIEF JUSTICE WHITE.

De Bary & Company seek the reversal of a judgment for the amount of a license tax (Act No 176 of 1908, Session Acts of that year, p. 236) for engaging "in the business of disposing of alcoholic liquors in less quantities than five gallons." It was conceded below that the business for which the license was exacted consisted only in the sale in the original packages of foreign wine or liquor, some of which was imported through the port of New York and some through the port of New Orleans, a portion of that which was brought into the port of New York having been there stored and subsequently shipped to New Orleans. The court below held, *first,* that imposing the license was an exertion by the State not only of its revenue powers, but of its police authority brought into play for the purpose of regulating the sale of liquor. In consequence of the provisions of the act of Congress known as the Wilson Act, August 8, 1890, 26 Stat. 313, chap. 728, and the decisions of this court interpreting and applying the same, it was therefore held that the sale of imported liquor in the original packages was subject to state regulation and hence the license was valid; *second,* that even if the Wilson Act did not concern liquor imported from a foreign country, nevertheless the license was valid be-

cause some of the liquor sold had been shipped to Louisiana from the State of New York after its importation from a foreign country.

Without considering the second proposition, we think the construction given to the Wilson Act, upon which the first proposition rests, was so obviously the result of the text of that act as interpreted by the decisions of this court as to leave no room for controversy. *Pabst Brewing Company* v. *Crenshaw,* 198 U. S. 17; *American Express Company* v. *Iowa,* 196 U. S. 133; *Vance* v. *Vandercook Co., No. 1,* 170 U. S. 438; *Rhodes* v. *Iowa,* 170 U. S. 412; *In re Rahrer,* 140 U. S. 545. It is true that the controversies which were passed upon in the cited cases concerned not liquors imported into the United States from foreign countries, but only liquors which had been brought in from one State to another. But this fact cannot be held to distinguish this case from the previous decisions without giving effect to a distinction without a difference. To hold that liquors brought into a State from a foreign country do not become subject to the state police power until sold in the original packages would certainly conflict with the command of the statute that "all" liquors "transported into any State or Territory or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such State or Territory" be subject "to the operation and effect of the laws of such State or Territory as though such liquors or liquids had been produced in such State or Territory and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." The word "all" causes a consideration of the point of origin of the liquors transported to be wholly negligible, and this irresistible conclusion as to the meaning of the text is rendered if possible clearer by a consideration of the intent of Congress in enacting the Wilson Law. In reason it is certain that the purpose which led to the enactment of the law was to give the several

States power to deal with all liquors coming from outside their limits upon arrival and before sale, thus rendering the state police authority more complete and efficacious on the subject; a purpose which would be plainly set at naught by exempting liquors brought into a State from a foreign country from the operation of the statute. Indeed to adopt the construction urged would not only give rise to the contradictions which the analysis of the contentions thus make plain, but would compel us to say that Congress intended by the Wilson Law to confer upon foreign producers of liquor a right which was specifically denied to liquor of domestic production.

*Affirmed.*