(No. 32451.—

Mutual Tobacco Co. Inc., Appellant, *vs.* Clifford E. Halpin, Director of Revenue, *et al.,* Appellees.

*Opinion filed January 22, 1953—Rehearing denied March 24, 1953.*

MICHAEL M. PHILLIPS, and MADIGAN & THORSEN, both of Chicago, (ROBERT THORSEN, of counsel,) for appellant.

IVAN A. ELLIOTT, Attorney General, of Springfield, (BEN W. HEINEMAN, of Chicago, of counsel,) for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This appeal concerns the constitutionality of the Illinois Cigarette Tax Act. Plaintiff, Mutual Tobacco Co., Inc., is a corporation engaged in the business of selling cigarettes in this State as a distributor, and has paid taxes incurred under the Cigarette Tax Act (Ill. Rev. Stat. 1951, chap. 120, par. 453.1 *et seq.*,) under protest in accordance with the provisions of section 2a of the act in relation to the payment of money into the State treasury. (Ill. Rev. Stat. 1951, chap. 127, par. 172.) Thereafter, within the time provided for by said statute, plaintiff filed in the superior court of Cook County its complaint seeking a temporary injunction to restrain the enforcement of the said Cigarette Tax Act and seeking to enjoin the State Treasurer from paying the said protested payments into the general fund. Plaintiff also sought a refund of said protested taxes.

The theory of plaintiff's complaint is based upon its contention that the tax of 1½ mills per cigarette incurred under the act is unconstitutional by reason of the manner in which it affects the ultimate price to consumers. It appears that the cheapest brand of cigarettes are commonly known as the economy brand, the popular brand of cigarettes are known as the standard brand, and the more expensive brand of cigarettes are known as the luxury brand in the parlance of the trade. The schedule of wholesale prices of cigarettes attached to plaintiff's complaint shows that the cheapest brand of cigarettes sells for $1.63 per carton and that the most expensive brand of cigarettes sells for $3.14 per carton. Plaintiff alleges that it does not sell any of the expensive brands selling at the maximum price. The complaint further alleges that the tax on the cheapest brands amounts to 18.4 per cent of the sales price, while the tax on the most expensive brands is only 9.5 per cent of the sales price; that on the sale of $1000 worth of cigarettes the tax varies from approximately $95 to $184; that the tax increases percentagewise as the price of the cigarette decreases; that this variance in tax between various brands of cigarettes results in a lack of uniformity in violation of certain constitutional provisions.

The defendants, the Director of Revenue, State Treasurer and Attorney General, filed a motion to strike the complaint and subsequently filed a substitute motion to strike and dismiss the complaint, alleging that plaintiff stated no grounds for equitable relief; that plaintiff would suffer no injury and therefore was not entitled to equitable relief and that plaintiff was not a proper party to the suit. Defendants' motion was supported by affidavits of a cigarette distributor and a trade-paper editor which in effect stated that the trade practice is to include the cigarette tax in the price charged for the cigarettes and that plaintiff included the tax in the price charged. These affidavits also claim that statistics showed that in the city of Chicago and in

the State of Illinois the total unit sales of economy and luxury priced cigarettes amount to only one per cent of all the cigarette sales in the city and State; that in terms of total dollar sales the sales of economy and luxury brand cigarettes are less than one per cent of the total sales of packaged cigarettes sold in the city and in the State. Plaintiff objected to the admission and use of said affidavits on the grounds that the affidavits raised affirmative defenses and were not admissible in evidence. Plaintiff's objection was overruled and defendants' motion was granted. Accordingly, the superior court of Cook County then entered an order overruling plaintiff's objection to said affidavits, granting the defendants' motion and striking plaintiff's complaint. Plaintiff elected to stand by its complaint and has appealed to this court.

We are in agreement with the contention that plaintiff is the proper party to maintain this action. Section 2 of the act imposes the tax upon any person engaged in business as a distributor of cigarettes in this State. The tax is a burden on plaintiff as a distributor and plaintiff must pay it. Plaintiff is obligated to pay it whether it has a profit or not. The purchaser neither guarantees the tax nor in the event of plaintiff's loss would the purchaser be obligated or expected to pay more. The tax is not charged as a separate item but, of necessity, is included along with other costs in arriving at the sales price. The fact that it was considered in arriving at the sales price does not make it any less a burden to the distributor. The title of the act shows that it deals with persons engaged in the business of selling cigarettes. The theory of the entire act is that it imposes a reasonable tax burden upon a certain class of business for the privilege of engaging in that business. The tax is an occupation tax. *Johnson* v. *Daley,* 403 Ill. 338.

We are also disposed to agree with plaintiff's contention that a temporary injunction should have been granted by the lower court to restrain the transfer of the funds as

prayed, pending this appeal. It is apparent from reading the entire Cigarette Tax Act that it does not provide machinery for the payment of taxes under protest. A taxpayer who wishes to follow such procedure must therefore rely upon sections 2a and 2a.1 of the act which provides for payment into the State Treasury of money paid under protest. By these sections the State is given ample notice as to all relevant facts, including the matter of litigation, concerning the protested taxes. The taxpayer in turn is required to file his complaint, within thirty days after giving notice of payment under protest, seeking a temporary injunction restraining the transfer of taxes from the protest fund. A copy of the temporary injunction order must be served upon the State Treasurer and also upon the official, board, commission, commissioner, department, institute, arm or agency to which such protest payment was made. If the taxpayer does not follow this procedure and merely refuses to pay the taxes he subjects himself to various penalties provided for under the Cigarette Tax Act. While it is true that the legislature cannot require this court to grant a temporary injunction in such a case as this for the reason that it would be an unconstitutional encroachment upon the judiciary, we nevertheless believe it is apparent and manifest that the legislature intended to provide protective machinery for payment of taxes under protest. We are of the opinion that where the taxpayer has in good faith followed the procedure outlined by the legislature, under the circumstances of this particular case, it was an abuse of discretion for the lower court to deny the taxpayer the relief of a temporary injunction order pending this appeal. The fact that the State Treasurer has courteously condescended to withhold transfer of the protested taxes does not render the point moot. This courtesy is revocable at will. In the case of *O'Gara Coal Co.* v. *Emmerson,* 326 Ill. 18, the trial court dismissed plaintiff's action for want of equity and dissolved the temporary injunction.

Upon appeal, the court ordered the temporary injunction continued in force during the pendency of the appeal.

It appears to be the practice of the State to file affidavits together with motions to dismiss in cases of this character. The nature of these affidavits is to inject certain affirmative matters into the issues. While we did consider such affidavits in *Krebs* v. *Thompson,* 387 Ill. 471, it is to be noted that no counteraffidavits were filed, nor was any objection made by the taxpayer in that case. The taxpayer, however, did object in the lower court in the case at bar and its objection was overruled. We are of the opinion the trial court erred in this respect. The procedure in this case is governed by the Illinois Civil Practice Act, and section 48 thereof provides that a motion to dismiss may be filed by a defendant when certain defects appear on the face of the complaint, *i.e.,* lack of jurisdiction of the person, lack of jurisdiction of subject matter, plaintiff lacking in legal capacity to sue, pendency of another action between the same parties for the same cause, *res judicata,* statute of limitations, release, Statute of Frauds and legal disability of defendant. This same section provides that where any of the aforesaid defects do not appear on the face of the complaint then defendant may support his motion with affidavits making such defects apparent. Nor can section 45 of the Civil Practice Act in any way be interpreted as allowing affirmative and new matters for a trial court's consideration to be attached to a motion to dismiss. *Hansen* v. *Raleigh,* 391 Ill. 536, 548.

The Illinois Cigarette Tax Act passed in 1941 is entitled "An Act in relation to a tax upon persons engaged in the business of selling cigarettes, and providing for collection of such tax and penalties for violations of the Act." An amendment raised the tax from 1 mill to 1½ mills per cigarette after January 1, 1947. Other amendments and changes are not pertinent to the issues here. For purposes of this case it is enough to state that the statute

imposes the tax on persons engaged in business as distributors of cigarettes in this state. It is an occupation tax and does not apply to cigars or other tobaccos.

In view of our decision in *Johnson* v. *Halpin,* 413 Ill. 257, the taxpayer's reply brief in this court now abandons its contention made originally to the effect that the classifications by the legislature of distributors of cigarettes contravened the equal-protection clause of the Federal constitution and the uniformity clause under section 1 of article IX of the Illinois constitution. The taxpayer's sole remaining contention is that the Cigarette Tax Act is unconstitutional for the reason that it is not uniform as to the class upon which it operates—cigarette distributors. Briefly stated, it contends that the law complained of imposes the same tax on each cigarette unit (1½ mills) but is not uniform because, when reflected in percentage of price, it results in a high per cent of the selling price of economy brand cigarettes and a low per cent of the selling price of luxury brand cigarettes. By operation of this act the tax on a sale of $1000 worth of Marvel cigarettes is approximately $184; of $1000 worth of Camel, Chesterfield or Lucky Strike cigarettes approximately $157, and of $1000 worth of Murad cigarettes approximately $95. The taxpayer agrees that the State has a right to pass such an occupation tax but contends it should have fixed the tax by a formula similar to the Illinois Retailers' Occupation Tax Act. It contends that to be uniform the tax should be determined by some standard capable of being measured in money, such as gross receipts, money invested, or net profits. A test of each of the suggested methods reveals that mathematical uniformity or equality cannot be attained. The flat tax (on cigarettes) has been applied by 37 states and by the Federal government.

We held in *Metropolis Theatre Co.* v. *City of Chicago,* 246 Ill. 20, that an ordinance classifying theaters into five

groups and fixing an annual license fee on each based on the price of admission did not violate section 1 of article IX of our State constitution. The taxpayer there advanced the same argument as the taxpayer here. This court stated, on page 24 of the said opinion: "The power to classify must be exercised in a reasonable manner, but a very wide range of discretion is allowed legislative bodies in the exercise of this power. Where a license is levied solely as a regulatory measure the amounts should bear some reasonable relation to the additional burdens imposed by [on] the business or occupation licensed, but where it is imposed for revenue or for revenue and regulation, the relation between the license and the public burden imposed is not involved."

The Motor Fuel Tax Act was challenged because it imposed a flat tax of three cents per gallon for the privilege of operating motor vehicles upon our public highways. This court upheld the validity of the tax in *People* v. *Deep Rock Oil Corp.* 343 Ill. 388. An examination of the cases cited in the *Deep Rock case* readily reveals the different types, classifications and bases for certain taxes upheld by this and other courts. A summation of all these cases can be stated in one word—reasonableness. The selection of a standard or basis must be left with the legislature and if such selection is not unreasonable the validity of the statute attacked must be upheld.

In *Banta* v. *City of Chicago,* 172 Ill. 204, where an argument similar to the taxpayer's was advanced, we held that the ordinance under consideration levied a license fee upon each person pursuing the occupation of a broker; that it required all brokers to pay a uniform fee, without regard to the amount or value of the business transacted by said brokers, or the capital they have, if any, invested in the business. We held the uniformity clause of our State constitution was complied with. For a further discussion con-

sidering various classifications held uniform as to class see *Harder's Fire Proof Storage and Van Co.* v. *Chicago,* 235 Ill. 58, and *McGrath* v. *City of Chicago,* 309 Ill. 515.

The case of *Ohio Oil Co.* v. *Wright,* 386 Ill. 206, is relied upon by the taxpayer here as authority for the proposition that the instant tax is not uniform as to the class upon which it operates. The latter case dealt with an occupation tax on persons engaged in the business of producing oil in this State and imposed a three per cent tax on the production of oil based on ownership of the oil at the time it was taken from the land. It imposed a liability on the operators drilling for oil as well as on the retained interest of the lessor and fixed the basis as the value of the oil at time of separation. This case held that the owner of a royalty cannot be considered as engaged in an occupation and, therefore, the tax must fail. A reading of the *Ohio Oil case* will clearly show the difference in the two statutes. The oil production tax could not operate uniformly on the class intended because of the great variance and divergence in the types of oil operators, producers and interests—all of which were included by the terms of the statute. Good text discussion of the problem of uniformity of such taxes is found in 51 American Jurisprudence 207, 230, and 238.

Absolute equality is impracticable in taxation and is not required by the equal-protection clause of the constitution. (*Bode* v. *Barrett,* 412 Ill. 204.) It may be true that the tax in the instant case is not the most equitable one that could be devised, but, as was said by the United States Supreme Court in *State Railroad Tax case,* 92 U.S. 575: "Perfect equality and uniformity of taxation as regards individuals or corporations, or the different classes or property subject to taxation, is a dream unrealized."

The order of the superior court is affirmed.

*Order affirmed.*