(No. 45454.—

CONSOLIDATED DISTILLED PRODUCTS, INC., *et al.*, Appellees, v. GEORGE E, MAHIN, Director of Revenue, *et al.*, Appellants.

*Opinion filed November 30, 1973.—Modified on denial of rehearing January 29, 1974.*

KLUCZYNSKI, J., took no part.

William J. Scott, Attorney General, of Springfield (Paul J. Bargiel, Bonny Sutker Barezky, and Patrick O'Day, Assistant Attorneys General, of counsel), for appellants.

Geocaris, Sneider & Troy, of Chicago (James R. Sneider, Richard J. Troy, and Gayle F. Haglund, of counsel), for intervenors.

Kenart M. Rahn, of Chicago, for appellees.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

This case involves an attack upon the Illinois Liquor Control Act which, after it was amended in 1953, imposed a privilege tax upon the distributors of wine made from

grapes grown in Illinois at a lower rate than the rate at which that tax was imposed upon distributors of wine made from grapes grown outside of Illinois or from other fruits. (Ill. Rev. Stat. 1969, ch. 43, par. 158.) The plaintiffs, who assert the invalidity of the statute generally and as so amended, are distributors of wine made from products other than grapes grown in Illinois. They sue on their own behalf and on behalf of other distributors similarly situated. The defendants are the Director of Revenue and the State Treasurer. The relief sought was a judgment declaring the invalidity of the tax, an injunction to restrain its collection in the future and a refund of taxes paid during the pendency of the action.

Certain individuals, who alleged that they had purchased wine at retail and had borne the burden of the challenged tax which was included in the price they paid for the wine that they bought, were granted permission to intervene on their own behalf and on behalf of all purchasers. The circuit court of Cook County entered an order establishing a protest fund, directing the defendants to place all taxes thereafter paid into that fund, and enjoining them from disbursing the taxes so paid pending the outcome of this action. Public Act 77—295, effective July 15, 1971 (Ill. Rev. Stat. 1971, ch. 43, par. 158), amended the statute and eliminated the tax differential in favor of wine made from grapes grown in Illinois.

The trial court held that the tax differential had been unconstitutional but that the tax did not violate the import-export clause of the United States Constitution (art. I, sec. 10, cl. 2). The plaintiffs argue, however, that even the present nondiscriminatory tax may not be imposed on importers of foreign liquors. We think that the tax did not and does not violate the import-export clause.

This question requires an understanding of the relevant parts of the Liquor Control Act.

Section 1 of article VIII of the Act provides (Ill. Rev. Stat. 1971, ch. 43, par. 158):

"A tax is imposed upon the privilege of engaging in business *** as an importing distributor of alcoholic liquor other than beer at the rate of 23 cents per gallon for wine containing 14% or less of alcohol by volume, [and] 60 cents per gallon for wine containing more than 14% of alcohol by volume, *** sold or used by such importing distributor, or as agent for any other person."

Section 2.16 of article I of the Act provides (Ill. Rev. Stat. 1971, ch. 43, par. 95.16):

" 'Importing distributor' means any person who imports into this State, from any point in the United States outside this State *** any alcoholic liquors for sale or resale ***."

Section 2.21 of article I of the Act provides (Ill. Rev. Stat. 1971, ch. 43, par. 95.21):

" 'Sale' means any transfer, exchange or barter in any manner, or by any means whatsoever ***. The term 'sale' includes any transfer of alcoholic liquor from a foreign importer's license [sic] to an importing distributor's license [sic] even if both licenses are held by the same person."

Section 2.27 of article I of the Act provides (Ill. Rev. Stat. 1971, ch. 43, par. 95.27):

" 'Foreign importer' means anyone who imports into this State, from any point outside the United States, any alcoholic liquors other than in bulk for sale to a licensed importing distributor."

Section 1 of article V of the Act provides (Ill. Rev. Stat. 1971, ch. 43, par. 115(j)):

"A foreign importer's license shall permit such licensee to import alcoholic liquor other than in bulk from any point outside the United States and to sell such alcoholic liquor to Illinois licensed importing distributors and to no one else in Illinois."

The Act does not tax importers of foreign wine but it does require them to sell only to licensed importing distributors if the imported foreign wine is sold to an Illinois purchaser. And although one person may hold both a foreign importer's license and an importing distributor's license, the transfer of imported foreign wine from a

foreign importer licensee to an importing distributor licensee is defined as a sale within the meaning of the Act. The contention is that imported foreign wine is thus taxed even though it remains in its original package and under the control and ownership of the original importer.

To decide whether such a tax is valid we turn to the relevant provisions of the United States Constitution. The import-export clause provides (art. I, sec. 10, cl. 2):

> "No State shall, without the consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws: ***."

The Twenty-first Amendment provides (Amend. XXI, sec. 2):

> "The transportation or importation into any State *** for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

The effect of the latter provision on the import-export clause was discussed by the United States Supreme Court in *Department of Revenue v. James B. Beam Distilling Co.* (1964), 377 U.S. 341, 12 L. Ed. 2d 362, 84 S. Ct. 1247. While the court there rejected the view that "the Twenty-first Amendment has completely repealed the Export-Import Clause so far as intoxicants are concerned" (377 U.S. at 345, 12 L. Ed. 2d at 366), we think that it indicated the validity of the kind of tax here involved. What was at issue in that case was the constitutionality of Kentucky's "tax of 10 cents on each proof gallon of whisky *** imported from Scotland *** 'collected while the whisky remained in unbroken packages in the hands of the original importer *and prior to resale or use by the importer.*' " (Emphasis supplied.) (377 U.S. at 342, 12 L. Ed. 2d at 364, 84 S. Ct. at 1248.) The court held that "because of the explicit and precise words of the Export-Import Clause of the Constitution, Kentucky may not lay this impost on these imports from abroad." 377 U.S. at 346, 12 L. Ed. 2d at 366-67, 84 S. Ct. at 1250.

As we have noted, the Liquor Control Act does not tax the foreign importer although it does require him to sell imported foreign wine to a licensed importing distributor who is taxed. In the *Beam Distilling* case, the court distinguished the case which, in our opinion, most nearly resembles this one: *Frederick De Bary & Co. v. Louisiana* (1913), 227 U.S. 108, 57 L. Ed. 441, 33 S. Ct. 239. In a footnote in the *Beam Distilling* opinion, the court pointed out: "Prior to the Eighteenth Amendment Congress passed the Webb-Kenyon Act and the Wilson Act, giving the states a large degree of autonomy in regulating the importation and distribution of intoxicants. Those laws are still in force. 27 U.S.C. secs. 121, 122. In *De Bary v. Louisiana,* 227 U.S. 108 [57 L. Ed. 441, 33 S. Ct. 239], the Court upheld under the Wilson Act a Louisiana license tax imposed on the business of *selling* in their original packages wines and liquors imported from abroad. There is nothing in that decision, nor in the language of either the Wilson Act or the Webb-Kenyon Act, to support the view that Congress intended by those laws to consent to state taxation upon importation of liquor." 377 U.S. 341, 345-46 n.7, 12 L. Ed. 2d 362, 366 n.7, 84 S. Ct. 1247, 1250 n.7.

Although the distinction the Supreme Court and Congress have drawn between a tax imposed on the importation of foreign liquor and a tax imposed on the importer engaged in the business of selling such liquor is a fine one, it is sufficient to sustain the constitutionality of the tax imposed by the Liquor Control Act. That tax is equivalent to the Louisiana license tax upheld in *De Bary* because it also taxes the business of selling in their original packages wines and liquors imported from abroad. Since *DeBary* has not been overruled and the Wilson Act has not been repealed, we hold that the tax now imposed by the Liquor Control Act is valid.

Although the present nondiscriminatory tax does not violate the import-export clause of the United States

Constitution, the parties have argued extensively with respect to the validity of the tax differential that was imposed by the statute prior to the 1971 amendment. The plaintiffs and the intervenors contend that the tax differential was prohibited by the Commerce Clause, the fourteenth and twenty-first amendments to the Constitution of the United States, and also by sections 13 and 22 of article IV and section 1 of article IX of the Illinois Constitution of 1870. Since the challenged differential has been repealed, this aspect of the case presents no constitutional issue as to the future. The proceeds of the tax have been accumulated, pursuant to the order of the circuit court, in the hands of the State Treasurer. On the assumption that the statutory preference was unconstitutional these proceeds are claimed on the one hand by the plaintiffs, who assert that they are entitled to them because they paid the tax, and on the other hand by the intervenors, who assert that they bore the actual burden of the tax. Each asserts that the other is not entitled to receive the funds on deposit. In our opinion the proper course is to determine at the outset whether, assuming that the challenged provision is invalid, either the plaintiffs or the intervenors are entitled to receive the funds held on deposit. If neither is entitled to those funds, these constitutional issues would be moot and need not be decided.

We consider first the claim of the intervenors. The trial court held that they had neither alleged nor proved that "the tax as such" had been passed on to them by the plaintiffs. Whether the tax was passed on "as such" is immaterial. "The only factor which is determinative of whether the purchaser is entitled to a refund is whether he bore the burden of the tax and not whether he bore it as a 'separate identified charge' or as a so-called 'hidden charge'." *Fiorito v. Jones* (1970), 45 Ill.2d 15, 17.

To establish that the tax had been actually passed on from the plaintiff distributors to the retail liquor dealers to

whom they sold, the intervenors relied upon the following stipulation: "That subsequent to each tax increase the Plaintiffs, and the class purportedly represented by Plaintiffs, increased the sales price of its wine to its customers, in an amount equal to or greater than the amount of the tax increase imposed by the statute." For the further step from the retailers to the consumers, the intervenors relied upon the affidavit of a single retail seller of liquor that the price that he paid to distributors was from time to time increased "because of the increased taxes imposed upon certain of the wines," and that he "would immediately thereafter pass the increase in the price of said wines caused by the tax increase onto his *** customers ***."

Direct transactions between the plaintiff distributors and the intervenor-consumers of wine are prohibited by section 3(e) of the statute (Ill. Rev. Stat. 1969, ch. 43, par. 121(e)), and we agree with the trial judge that there was no adequate showing that the burden of the tax was transmitted through the retailers, with whom alone a distributor may deal, to the ultimate consumers. The intervenors have not shown that they bore the burden of the tax.

In disposing of the claim of the intervenors, the trial court also stated that "*** in any event, their position cannot be sustained since it was held in *Snyderman v. Isaacs,* 31 Ill.2d 192 (1964), that *the only person entitled to receive credit is the remitter of the tax, (id.* at 196)." (Italics supplied.) This seems to be the basis on which the plaintiff distributors were held to be entitled to a refund of the amount on deposit. The trial court's reliance upon this isolated statement was misplaced.

*Snyderman* dealt with an attempt by the lessee of an automobile to maintain a class action on behalf of all lessees to recover taxes paid under the statute held invalid in *International Business Machines Corp. v. Department of Revenue* (1962), 25 Ill.2d 503. In *Snyderman* the court held that the lessee was barred from recovery under "the

general rule that without legislative authorization voluntary tax payments can not be recovered." (31 Ill.2d 192, 196.) The opinion discussed the available legislative remedies and the statement relied upon by the trial court was made in the following context:

> "There is recognition also that a refund procedure without safeguards might result in refunds of taxes that had not actually been remitted, or in the unjust enrichment of persons who had not themselves paid the tax, but had passed its burden on to another. To protect the real taxpayer and to prevent unjust enrichment of any other party, the legislature has provided both in the Use Tax Act and in the Retailers' Occupation Tax Act that *the only person entitled to receive credit is the remitter of the tax.* And it has also required that where the remitter has not himself borne the burden of the tax, he must directly or indirectly reimburse the actual taxpayer before filing his claim with the Department. Ill. Rev. Stat. 1961, chap. 120, pars. 439.19, 445." 31 Ill.2d 192, 196. (Italics supplied.)

The statutory policy against unjust enrichment applies to this case. As we stated in *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill.2d 532, 537, "No reason has been suggested why the basic policy that the legislature has thus expressed is not equally applicable whether the proceeding is an administrative one terminating in the issuance of a credit memorandum for use in the payment of future taxes, or a judicial one terminating in the refund of cash held under an injunction by State officials. *Cf. Svithiod Singing Club v. McKibbin,* 384 Ill. 493."

The policy against unjust enrichment through the refund of illegal taxes did not have a legislative origin. The general rule was stated in the annotation to *United States v. Jefferson Electric Manufacturing Co.* (1934), 291 U.S. 386, 78 L. Ed. 859, 877: "the proper party to recover a

tax illegally exacted *** is the person actually bearing the burden of the tax ***." The fact that the General Assembly did not specifically incorporate in the Dram Shop Act the provisions against unjust enrichment through tax refunds that are contained in section 6 of the Retailers' Occupation Tax Act (see Ill. Rev. Stat. 1971, ch. 43, par 165a) does not, we think, indicate a repudiation of the general principle. No reason has been suggested to explain why the legislature would have intended to discriminate in favor of liquor dealers, and in the absence of strong justification we decline to hold that it did so.

In *Benzoline Motor Fuel Co. v. Bollinger* (1933), 353 Ill. 600, 608, this court held, in the absence of any statute, that the remitter of the unconstitutional tax imposed by the Motor Fuel Tax Act of 1927 had a right to a refund of taxes paid under protest because he had complete records, and thus was practically able to give each of his customers who bore the burden of the tax a "full and accurate refund," as he was legally required to do. The plaintiff distributors have not claimed that they are legally obligated and practically able to distribute a tax refund to those of their customers who bore the burden of the tax. On the contrary, they have contended that they alone have a legal right to a refund.

The general policy against unjust enrichment enunciated in the *Bollinger* decision, as well as the statutory policy enunciated in other tax acts, leads us to the conclusion that the plaintiff distributors do not have a right to a refund. That the plaintiffs remitted the tax is not alone determinative. There has been no showing that they bore the burden of the tax. The only proof that bears upon that question is the stipulation that has been quoted, and that shows, or tends to show, that they passed the tax on to the retailers to whom they sold. Certainly it does not show that the plaintiff distributors bore the tax. The fact that the tax was not separately stated in the transaction between the plaintiffs and the retailers to whom they sold

is not determinative. *Fiorito v. Jones* (1970), 45 Ill.2d 15, 17.

The plaintiffs contend, however, that this court's decision in *Mutual Tobacco Co. v. Halpin* (1953), 414 Ill. 226, grants them a legal right to a refund. In that case it was said that a cigarette distributor who remitted taxes imposed by the Cigarette Tax Act (Ill. Rev. Stat. 1951, ch. 120, par. 453.1 *et seq.*) had sufficient standing to challenge the constitutionality of the Act. The State's brief in that case was concerned only with the constitutional issue, and the problem of unjust enrichment was not mentioned in it. The opinion cites none of this court's earlier decisions which barred unjust enrichment through the refund of illegal taxes (see, *e.g., Richardson Lubricating Co. v. Kinney* (1929), 337 Ill. 122), and the opinion in the *Mutual Tobacco* case can not be regarded as establishing the right of the remitter of an illegal tax to a refund regardless of unjust enrichment.

It should be pointed out that in this case, as in *Snyderman v. Isaacs* (1964), 31 Ill.2d 192, 197, none of the parties have referred to the failure of the plaintiffs to pursue their administrative remedy.

For the reasons stated we conclude that neither the plaintiffs nor the intervenors are entitled to the moneys held in the protest fund. The judgment of the circuit court of Cook County is reversed and the cause is remanded to that court with directions to dismiss the complaint.

*Reversed and remanded, with directions.*

MR. JUSTICE KLUCZYNSKI took no part in the consideration or decision of this case.