(No. 52064.—

THE ESTATE OF THOMAS CAREY *et al.*, Appellants, v. THE VILLAGE OF STICKNEY, Appellee.

*Opinion filed June 20, 1980.—Modified on denial*
*of rehearing September 26, 1980.*

GOLDENHERSH, C.J., and UNDERWOOD and WARD, JJ., dissenting.

Carey, Filter & White, of Chicago (Edward M. White, of counsel), for appellants.

Donald J. Kreger, of Chicago (Friedman & Koven, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Plaintiffs, the estate of Thomas Carey and Suburban Downs, Inc., conduct, respectively, horse- and harness-racing meets in the defendant village of Stickney under licenses issued by the Illinois Racing Board. Plaintiffs brought this declaratory judgment action, seeking the invalidation of a 1974 Stickney tax ordinance which requires racetrack licensees to pay 10 cents to Stickney "for each person entering the grounds or enclosures of the licensee upon a ticket of admission" (Stickney Municipal Code of 1965, ch. 18A, sec. 18A.02). The ordinance allows but does not require licensees to collect the amount of the tax from each ticket holder. Plaintiffs have refused to pay the tax and contend that they have not collected the tax from ticket holders. Defendant contests plaintiffs' claim that the tax has not been collected from ticket holders.

The circuit court held, in the wake of our then recent decision in *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, that the Stickney tax is a tax upon occupations which a home rule unit may not impose without authorization by the General Assembly (Ill. Const. 1970, art. VII, sec. 6(e)(2)). The circuit court further ruled that there existed no just reason for delay of enforcement or appeal but that it would retain jurisdiction "for the purpose of determining whether a fund has been created by collection of the tax held invalid and determining the proper distribution of such fund, if any, in the event of affirmance of this Court's order." The appellate court, relying on its interpretation of the *Cicero* case, reversed the judgment of the circuit court and held that the Stickney tax is not an occupation tax but rather represents a valid exercise of Stickney's home rule taxing power. (69 Ill. App. 3d 539.) We allowed plaintiffs' petition for leave to appeal, and we now reverse.

Under the Illinois Constitution of 1970, home rule units such as the defendant village of Stickney are granted broad authority in matters "pertaining to its government and affairs including, but not limited to, the power *** to tax *** ." (Ill. Const. 1970, art. VII, sec. 6(a).) There are few limitations placed upon the taxing authority of home rule units, but they are prohibited from imposing "taxes *** upon occupations" unless authorized by the General Assembly. (Ill. Const. 1970, art. VII, sec. 6(e).) In defining a tax "upon occupations," we have looked to cases involving the imposition of occupation taxes by the General Assembly under the Constitution of 1870. (Ill. Const. 1870, art. IX, sec. 1; see *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10,.21; *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 565-66.) The case most frequently cited, *Reif v. Barrett* (1933), 355 Ill. 104, 109, defines "occupation tax" as one designed "to regulate and control a given business or occupation, or to

impose a tax for the privilege of exercising, undertaking or operating a given occupation, trade or profession. Its effect is to license a person engaged in a given calling or occupation. A license in form may not be issued to a taxpayer but the payment of the tax is the license *** to engage in such occupation. Regulation is not a necessary adjunct of an occupation tax. It may or it may not be. The payment of the tax itself is a condition precedent to the privilege of carrying on a business or occupation. The payment of the tax is made mandatory by the act creating it upon the right of the individual to follow the given occupation."

In a purported exercise of its constitutional authorization to impose taxes as a home rule unit, the defendant village of Stickney, in 1974, enacted the ordinance here under attack. The ordinance provides, in pertinent part:

"Any licensee operating a race track for horse racing purposes within the Village of Stickney shall pay to the Village the sum of TEN CENTS (10¢) for each person entering the grounds or enclosures of the licensee upon a ticket of admission. If tickets are issued for more than one day, then the said sum of TEN CENTS (10¢) shall be paid for each person using such ticket on each day that the same shall be used. Providing, however, that no charge shall be made on tickets of admission issued to and in the name of directors, officers, agents or employees of the licensee, or to owners, trainers, jockeys and their employees or to any person or persons entering the grounds or enclosure for the transaction of business in connection with race meetings or operations. The licensee may, if it desires, collect such amount from each ticket holder in addition to the amount or amounts charged for such ticket of admission." Stickney Municipal Code of 1965, ch. 18A, sec. 18A.02.

Defendant Stickney argues initially, in reliance on the Illinois Municipal Code, that its tax was expressly authorized by the General Assembly's grant to municipalities of the power to tax amusements (Ill. Rev. Stat. 1975, ch. 24, par. 11—42—5). The provision upon which defendant relies, however, was expressly inapplicable to racetrack

licensees such as plaintiffs at the time here relevant. (Ill. Rev. Stat. 1975, ch. 8, par. 37j1.) The imposition of the tax therefore can be considered valid only if such action was within defendant's general home rule taxing authority (Ill. Const. 1970, art. VII, sec. 6(a)). The parties do agree that the type of tax here challenged is now, by virtue of the General Assembly's amendment of the Illinois Horse Racing Act of 1975, expressly authorized, effective January 1, 1976 (Ill. Rev. Stat. 1977, ch. 8, par. 37—27(f)). We are therefore concerned with the validity of defendant's ordinance only insofar as it seeks to impose a tax upon plaintiffs from the effective date of the ordinance, November 24, 1974, through 1975.

In holding that the Stickney tax is not a tax upon occupations, the appellate court stated that its conclusion was compelled by our decision in *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10. We do not agree, however, that the *Cicero* case requires that the Stickney tax likewise be upheld.

At issue in *Cicero* was an ordinance imposing a tax on *all* amusements in the town of Cicero, and the court there held that such a tax is not an occupation tax, since it "is not confined to those who are engaged in businesses for profit." (65 Ill. 2d 10, 22.) In explaining its holding, the court reasoned that one who conducts an amusement is not necessarily in the occupation of conducting that amusement. (65 Ill. 2d 10, 22.) The court acknowledged that "some of those who are taxed by the Ordinance may be said to be engaged in the occupation of presenting or conducting amusements." (65 Ill. 2d 10, 23.) The court held, however, in keeping with *Reif v. Barrett* (1933), 355 Ill. 104, 109, that a tax is not an occupation tax unless it is designed to impose and, in fact, imposes a tax upon given occupations. (*Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 23.) Because imposition of the Cicero tax was not limited to "occupations," as

that word is commonly used to mean profit-motivated, on-going concerns (*Reif v. Barrett* (1933), 355 Ill. 104, 122-23), the court held that it was not an occupation tax and was within the home rule taxing authority of Cicero.

In the present case, as contrasted with *Cicero*, it is indisputable that the tax is designed to impose and does impose a tax upon a given occupation, those licensed to conduct racing meetings. The tax is therefore an occupation tax. (*Heyman v. Mahin* (1971), 49 Ill. 2d 284, 288 (tax on cigarette retailers); *Mutual Tobacco Co. v. Halpin* (1953), 414 Ill. 226, 229 (tax on cigarette distributors); *Reif v. Barrett* (1933), 355 Ill. 104, 116-18 (tax on sellers of tangible personal property).) The fact that the amount of the tax may be passed on to those holding tickets does not change the nature of the tax; it remains an occupation tax. (*Winter v. Barrett* (1933), 352 Ill. 441, 455-57.) The legal incidence of the tax, rather than the actual burden, controls. (*First National Bank v. Jones* (1971), 48 Ill. 2d 282, 288; *National Bank v. Isaacs* (1963), 27 Ill. 2d 205, 207.) On this point, *S. Bloom, Inc. v. Korshak* (1972), 52 Ill. 2d 56, 62-63, *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 551-52, and our recent decision in *Kerasotes Rialto Theatre Corp. v. City of Peoria* (1979), 77 Ill. 2d 491, 500, are distinguishable, since each involved a tax in which the legal incidence was expressly placed on the consumer.

The remaining issue to be decided is whether money collected from ticket holders, if any, is to be returned to the ticket holders, retained by plaintiffs, or remitted to defendant. Plaintiffs admit that they have refused to pay the tax to defendant, but the parties are in dispute as to whether plaintiffs collected the 10-cent charge from ticket holders. Plaintiffs claim that they did not; defendant argues to the contrary. The circuit court, by the terms of its order, retained jurisdiction to resolve this factual issue in the event that its judgment, declaring the Stickney tax invalid, was affirmed. Having affirmed that judgment, we

remand the cause to the circuit court to allow it to enter its finding on whether plaintiffs collected the amount of the tax from ticket holders. If the circuit court should find that ticket holders were not so charged, no further order would be necessary. If the circuit court should find, however, that ticket holders were so charged, the court should further order that money collected by plaintiffs be refunded "to those of their customers who bore the burden of the tax." (*Consolidated Distilled Products, Inc. v. Mahin* (1973), 56 Ill. 2d 110, 119, citing *Benzoline Motor Fuel Co. v. Bollinger* (1933), 353 Ill. 600, 608.) If it is impractical to determine exactly which customers paid the tax, the circuit court should devise some equitable plan for distributing the fund. In no event should plaintiffs be entitled to keep any money collected from ticket holders under this illegal tax; the State's policy against unjust enrichment forbids such a result. *Consolidated Distilled Products, Inc. v. Mahin* (1973), 56 Ill. 2d 110, 118-19.

For the foregoing reasons, the judgment of the appellate court is reversed, the judgment of the circuit court is affirmed, and the cause is remanded to the circuit court for further proceedings in accordance with the views expressed herein.

*Appellate court reversed;*
*circuit court affirmed;*
*cause remanded,*
*with directions.*

MR. CHIEF JUSTICE GOLDENHERSH, dissenting:

I dissent and would affirm the judgment of the appellate court. Under the authorities, the tax imposed by the ordinance is clearly an amusement tax, the enactment of which is authorized under the defendant's home rule powers and is not a tax proscribed by article VII, section 6(e), of the Constitution of 1970.

In *Reif v. Barrett* (1933), 355 Ill. 104, upon which the majority relies for its definition of "occupation tax," the court said:

"[A]n occupation tax has one of two missions: either to regulate and control a given business or occupation, or to impose a tax for the privilege of exercising, undertaking or operating a given occupation, trade or profession. Its effect is to license a person engaged in a given calling or occupation. A license in form may not be issued to a taxpayer but the payment of the tax is the license under the authority of the State to engage in such occupation. Regulation is not a necessary adjunct of an occupation tax. It may or it may not be. The payment of the tax itself is a condition precedent to the privilege of carrying on a business or occupation. The payment of the tax is made mandatory by the act creating it upon the right of the individual to follow the given occupation. An occupation tax may be levied under the general police powers of the State, where its purpose is to regulate or control a given occupation, or it may be levied under the general sovereign powers of the State, where its sole purpose is to raise revenue. Under which power it is levied makes no difference as to the character of the tax. The type of tax is not changed by any name that may be given it under the law through which it is enacted, neither is the test as to whether or not the occupation tax is the sole revenue or only a part of the revenue of the State." 355 Ill. 104, 109-10.

Clearly the defendant was without authority to license or regulate the activity of operating a racetrack, and the tax here involved was not of the type contemplated in

*Reif.* That the tax levied by the defendant village is an amusement tax and not a tax on an occupation is demonstrated by the fact that section 27 of the Illinois Horse Racing Act of 1975 (Ill. Rev. Stat. 1977, ch. 8, par. 37—27(f)), which now specifically authorizes the tax, provides:

> "[A]ny municipality that has a Racing Board licensed horse race meeting at a race track wholly within its corporate boundaries may charge a local amusement tax not to exceed 10¢ per admission to such horse race meeting by the enactment of an ordinance."

This tax is precisely like that which was upheld in *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, the only difference being that its applicability is limited to those who seek amusement by attending horse-race meetings. Further, it is indistinguishable from the tax upheld in *Greater Chicago Indoor Tennis Clubs, Inc. v. Village of Willowbrook* (1976), 63 Ill. 2d 400, which imposed an amusement tax on indoor tennis clubs.

Section 6(m) of article VII of the 1970 Constitution provides that the "Powers and functions of home rule units shall be construed liberally" and any doubts should be resolved in favor of a broad interpretation of defendant's taxing power. To hold, as does the majority here, is to directly contravene the constitutional mandate.

UNDERWOOD and WARD, JJ., join in this dissent.